VINICIO ALMONTE y CLEMENCIA LEDUC ET AL., peticionarios, *v.* ALEJANDRINO BRITO y/o ESTANCIAS REALES, S.E., recurridos.

*Números:* CC-2002-100,   *Resueltos:* 2 de abril de 2002
CC-2002-113,
CC-2002-114

476

*Xaíra L. Santiago Acosta* y *María E. Arroyo Ramos*, abogadas de la parte peticionaria; *Edilberto Berríos Dávila*, abogado de la parte recurrida; *Mónica Figueroa Ramos* y *Mayra I. Martínez Pérez*, abogadas del Departamento de Asuntos del Consumidor.

PER CURIAM:

(Regla 50)

I

Los esposos Vinicio Almonte y Clemencia Leduc; Rafael Martínez y Dannette Ortiz; Minnie A. González y Miguel Arroyo (los peticionarios),[1] respectivamente, convinieron con Estancias Reales, S.E. (Estancias Reales), sendos contratos de opción para la compra de unas residencias en la Urbanización Palma Real en Guaynabo, Puerto Rico. Los contratos uniformes de opción a compra (tipo formulario aprobado por Departamento de Asuntos del Consumidor (D.A.Co.)) fueron otorgados en 1997 y 1998, fijando, a su vez, un precio tentativo de venta que oscilaba entre $365,775 y $436,850.

Los días 6 y 17 de julio de 2000, Estancias Reales notificó a las partes un aumento de cuarenta y un mil dólares ($41,000) al precio de venta. Luego, los días 26 de julio de 2000 y 2 de agosto de 2000, Estancias Reales entregó a los peticionarios una carta en la cual les indicó que debían comparecer a sus oficinas los días 2, 3 y 9 de agosto de

---

[1] El Departamento de Asuntos del Consumidor (D.A.Co.) es, además, el peticionario en el recurso CC–2002–113.

2000 para otorgar las escrituras de compraventa respecto a las propiedades objeto de los contratos de opción antes señalados. Además, les indicó que de no otorgar las escrituras en o antes del 27 de agosto de 2000 y el 3 de septiembre de 2000, procederían a cancelar los contratos de opción.

Por entender que el aumento en el precio de venta no estaba justificado, los peticionarios presentaron ante D.A.Co. sendas querellas en contra de Estancias Reales y/o su representante de ventas, el Sr. Alejandro Brito. Alegaron que éstos incumplieron el contrato y solicitaron que se les ordenara honrar el precio de venta acordado.[2]

El 3 de agosto de 2000, D.A.Co. emitió una orden provisional de cese y desista en contra de Estancias Reales, respecto a los contratos de opción y de compraventa de las partes querellantes, y señaló una vista para el 14 de agosto de 2000. Concluyó que, "[a] base de los preceptos legales antes señalados, existe justa causa para señalar una vista administrativa con carácter urgente *para dilucidar las querellas presentadas* contra la parte querellada ...".[3] Además, dispuso lo siguiente:

> EN LA VISTA LAS PARTES *HARAN TODAS LAS ALEGACIONES Y PRESENTARAN TODA LA PRUEBA* DOCUMENTAL Y TESTIFICAL QUE CONSIDEREN NECESARIAS PARA SU CASO. SE LES APERCIBE QUE ESTA *SERA LA UNICA OPORTUNIDAD QUE TENDRAN PARA LA DISCUSION PLENA DEL MISMO*, POR LO QUE DEBERAN TRAER TODA LA PRUEBA PERTINENTE A SU CASO PARA ESTA VISTA. NO SE DARA OPORTUNIDAD POSTERIOR PARA TRAER PRUEBA ADICIONAL. (Énfasis suplido.)[4]

El 9 de agosto de 2000, Estancias Reales solicitó la posposición de la vista y alegó que aun cuando ya había hecho acopio de la prueba a ser presentada, no podía comparecer

---

[2] Los matrimonios Almonte-Leduc y González-Arroyo presentaron sus respectivas querellas el 24 de julio de 2000; el matrimonio Martínez-Ortiz presentó la suya el 21 de agosto de 2000.

[3] Notificación y Orden de 3 de agosto de 2000 emitida por D.A.Co.

[4] Íd.

a ésta ya que su representación legal debía comparecer a otra vista previamente señalada en un caso ante el Tribunal de Primera Instancia. Mediante Notificación y Citación de 15 de agosto de 2000, D.A.Co. concedió la petición de Estancias Reales y procedió a señalar una nueva vista para el 25 de agosto de 2000, *"bajo los mismos apercibimientos de la notificación original"*. (Énfasis suplido.)(⁵)

Llegada esa fecha, Estancias Reales, por primera vez, puso a disposición de los peticionarios la prueba documental según requerida por D.A.Co. Dado el volumen de la prueba, los peticionarios solicitaron la suspensión de la vista, razón por la cual D.A.Co. procedió a señalarla para el 30 de agosto de 2000, quedando las partes notificadas en la vista de la nueva fecha. El señalamiento fue, además, notificado por escrito el 29 de agosto de 2000, reiterando que ésta sería la única oportunidad que tendrían las partes para la discusión plena de sus alegaciones.

Finalmente, el 30 de agosto de 2000, y los días 1, 5, 8 y 14 de septiembre de 2000, se celebró la vista concernida. Las partes presentaron abundante prueba documental y testifical. El 5 de diciembre de 2000, D.A.Co. emitió una extensa Resolución en la cual ordenó a Estancias Reales realizar los trámites correspondientes para el otorgamiento de las escrituras de compraventa y que, además, honrara el precio originalmente pactado.

Por no estar conforme con la determinación de D.A.Co., Estancias Reales recurrió ante el Tribunal de Circuito de Apelaciones (TCA) mediante un recurso presentado el 22 de enero de 2001. Alegó que D.A.Co. cometió los siguientes errores: (1) evaluar el caso en sus méritos, negándole de esta forma el debido proceso de ley; (2) resolver que los incrementos en los costos de construcción que a su vez no conllevaron cambios en los planos, no podían ser considerados en la determinación del precio de venta definitivo, y (3) resolver que la Cláusula 6 del contrato de opción impe-

---

(⁵) Notificación y Citación de 14 de agosto de 2000 emitida por D.A.Co.

día la notificación de un aumento en el precio de venta, dado que había transcurrido un año a partir de la fecha en que éste se suscribió. Además, arguyó que las determinaciones de D.A.Co. manifiestan pasión, prejuicio, parcialidad y error manifiesto. El 27 de noviembre de 2001, el TCA revocó la determinación de D.A.Co. por entender que se había violado el derecho de Estancias Reales a un debido proceso de ley.

Inconforme con la determinación del TCA, recurren los peticionarios ante nos mediante peticiones de *certiorari* presentadas el 31 de enero de 2002 y el 4 de febrero de 2002. Vinicio Almonte y Clemencia Leduc, y Rafael Martínez y Dannette Ortiz comparecieron mediante el recurso CC–2002–100; D.A.Co. compareció mediante el recurso CC–2002–113, y Minnie González Ríos y Miguel Arroyo comparecieron mediante el recurso CC–2002–114. En síntesis, los peticionarios alegan que el TCA erró al determinar que D.A.Co. despojó a Estancias Reales de su derecho a un debido proceso de ley.

El 19 de febrero de 2002, Estancias Reales presentó ante nos un escrito en el que solicita la consolidación y se opone a los recursos presentados. Alega que la determinación del TCA fue correcta y que efectivamente le fue negado el debido proceso de ley, dado que entiende que la vista era sobre una orden de entredicho provisional y no para discutir las querellas en sus méritos. Alega que D.A.Co. nunca expresó que en la vista se adjudicarían las querellas en sus méritos.

Examinadas las peticiones de *certiorari* y sus apéndices, así como el escrito presentado por Estancias Reales, consolidamos los recursos por estar estrechamente relacionados entre sí, expedimos el auto y resolvemos sin trámite ulterior, a tenor con la Regla 50 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI–A.

## II

■ Con el propósito de proveer un sistema adjudicativo económico, rápido y práctico, se delegaron a las agencias administrativas poderes cuasi judiciales. *López y otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109, 113 (1996); *Srio. D.A.C.O. v. J. Condóminos C. Martí*, 121 D.P.R. 807, 821 (1988). Esta delegación favorece, a su vez, un proceso ágil y sencillo, propiciando su uso eficiente por las personas legas. *López y otros v. Asoc. de Taxis de Cayey*, supra; *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 202 (1987); *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 231 (1987).

■ En vista de que dentro de su función adjudicativa las agencias administrativas han de interferir con los intereses de libertad y propiedad de los individuos, se hace extensiva a los procedimientos ante éstas la garantía a un debido proceso de ley. En su vertiente procesal, el debido proceso de ley requiere que la intervención del Estado sea a través de un procedimiento justo y equitativo. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 887–888 (1993); *López Vives v. Policía de P.R.*, supra. Una vez está en juego un interés individual de libertad o propiedad, hay que determinar cuál es el procedimiento exigido (*what process is due*), el cual dependerá de las circunstancias dadas, salvaguardando siempre que sea un procedimiento justo e imparcial, no arbitrario. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 888.

■ Ya que el objetivo de la adjudicación administrativa es proveer un sistema justo, práctico y flexible, hemos reconocido que las normas del debido proceso de ley no se aplican dentro del campo administrativo con la misma rigurosidad que se aplican dentro de la adjudicación judicial. *López y otros v. Asoc. de Taxis de Cayey*, supra; *Pérez Ríos v. Hull Dobbs*, 107 D.P.R. 834, 840 (1978). Al respecto, he-

mos establecido que "[e]l debido proceso no es un 'molde rígido que prive de flexibilidad' a los organismos administrativos ...". *López Vives v. Policía de P.R.*, supra, págs. 230–231. Véase *Rodríguez v. Tribunal Superior*, 104 D.P.R. 335, 340 (1975).

Se han hecho extensivas a los procedimientos administrativos las siguientes garantías tradicionalmente reconocidas: la concesión a una vista previa, oportuna y adecuada notificación, derecho a ser oído, confrontarse con los testigos, presentar prueba oral y escrita a su favor, y la presencia de un adjudicador imparcial. *López y otros v. Asoc. de Taxis de Cayey*, supra, pág. 114; *Henríquez v. Consejo Educación Superior*, supra; *Ortiz Cruz v. Junta Hípica*, 101 D.P.R. 791, 795 (1973).

La Sec. 3.1 de la Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2151), según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), reconoce las garantías antes señaladas.

En cuanto a la notificación de la vista administrativa, la Sec. 3.9 de la L.P.A.U., 3 L.P.R.A. sec. 2159, requiere que se notifique a todas la partes por escrito haciendo constar la fecha, la hora y el lugar en que se celebrará la vista adjudicativa. "La notificación se deberá efectuar por correo o personalmente con no menos de quince (15) días de anticipación a la fecha de la vista, *excepto que por causa debidamente justificada, consignada en la notificación, sea necesario acortar dicho período ...*". (Énfasis suplido.) 3 L.P.R.A. sec. 2159.

En *Depto. Rec. v. Asoc. Rec. Round Hill*, 149 D.P.R. 91 (1999), expresamos que el término dispuesto por la Sec. 3.9 de la L.P.A.U., *supra*, es de cumplimiento estricto, y que el propósito del mismo es permitir que las partes se preparen adecuadamente para la vista administrativa. Respecto a la reducción del término de

quince días para la notificación, el Prof. Demetrio Fernández Quiñones señala lo siguiente:

> El período de quince días puede ser acortado por causa debidamente justificada. La reducción del período no puede ser de tal magnitud que le afecte al querellado su derecho a preparar su defensa, bien en lo referente a contestar la querella como a la disponibilidad de la prueba oral o documental que necesite presentar el día de la vista. El criterio aplicable es el de razonabilidad. De hecho, no existe una regla mecánica que gobierne lo acertado y adecuado del período que se ha establecido para la celebración de la vista. Esta es la típica cuestión que tendrá que ser resuelta, caso por caso, según los hechos y circunstancias que concurran en cada caso en particular.[6]

En el caso de D.A.Co., tanto el Art. 13 de la Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341*l*), conocida como la Ley Orgánica del Departamento de Asuntos del Consumidor (Ley de DACO), así como la Regla 9 del Reglamento de Procedimientos Administrativos del Departamento de Asuntos del Consumidor, Reglamento Núm. 6219 de 17 de octubre de 2000, págs. 5–6 (Reglamento de DACO),[7] facultan al D.A.Co. a emitir órdenes de cesar y desistir. Previo a emitir una orden de cese y desista, D.A.Co. deberá notificar a las partes y celebrar una vista a esos fines. No obstante, el departamento podrá emitir una orden provisional de cesar y desistir sin la celebración de una vista cuando se cause o se pueda causar un daño inmediato a los consumidores o a un consumidor en particular, y requiera la acción inmediata de D.A.Co. Art. 13 de la Ley de DACO, *supra*; Regla 9.1 del Reglamento de DACO, *supra*. Dentro de los diez días posteriores a la emisión de la

---

[6] D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed. rev., Bogotá, Ed. Forum, 2001, Sec. 4.2, págs. 148–149.

[7] Durante la tramitación del caso de autos en D.A.Co., era de aplicación el Reglamento de Procedimiento Adjudicativo, Reglamento Núm. 5416 de 24 de abril de 1996 (10 R.P.R. sec. 250.1 *et seq.*). Las Secs. 4 y 26 (10 R.P.R. secs. 250.2 y 250.24), disponían, respecto a las órdenes de cesar y desistir, de la misma manera que el Reglamento de Procedimientos Administrativos del Departamento de Asuntos del Consumidor, Reglamento Núm. 6219 de 17 de octubre de 2000, hoy vigente.

orden de cesar y desistir, D.A.Co. deberá celebrar una vista para discutir la procedencia de dicha orden. Íd.

## III

En síntesis, la controversia del caso de autos se centra en si la notificación emitida por D.A.Co. informó a Estancias Reales, dentro de los criterios de razonabilidad, que en la vista señalada se discutirían las querellas presentadas en sus méritos, y segundo, si actuó correctamente al seguir el trámite que hoy revisamos.

En este caso, D.A.Co. emitió originalmente una orden de cesar y desistir sin vista previa en contra de Estancias Reales, a los fines de evitar que ésta realizara trámite alguno para disponer de las propiedades que los peticionarios habían opcionado. Al así proceder, D.A.Co. actuó correctamente dentro del marco de las normas vigentes. Según señaláramos anteriormente, D.A.Co. tiene la facultad para emitir este tipo de orden sin la necesidad de celebrar una vista previa, ello en aquellos casos en que se pueda causar un daño inmediato a los consumidores. Surge de los autos que los peticionarios estaban ante una situación en la que podían perder no sólo el dinero invertido hasta ese momento, sino también la residencia que habían proyectado como su nuevo hogar. Sin embargo, lo antes expresado no dispone del asunto antes nos.

En la orden emitida, D.A.Co. expuso las razones por las cuales emitió la orden y citó a las partes para que comparecieran a una vista a celebrarse una vez transcurridos once días. Al así citar a las partes, D.A.Co. fue enfático al apercibirles de que en la vista se habrían de discutir todas las alegaciones, por lo que debían presentar toda prueba a su haber, por ser esa la única oportunidad que tendrían para la *discusión plena* de los asuntos. Sin embargo, Estancias Reales insiste en alegar que D.A.Co. no le notificó que el propósito de la vista era discutir los méritos de las

querellas. No podemos dar crédito alguno a dichos planteamientos; la orden de D.A.Co. es clara y habla por sí sola. Sin embargo, aún así, debemos determinar si el término entre la fecha de la notificación y la fecha para la cual se pautó la vista cumplía con la LPAU y el debido proceso de ley. Entendemos que sí. Veamos.

Conforme a la Sec. 3.9 de la LPAU, *supra*, la notificación de la celebración de la vista debe ser realizada en un término no menor de quince días de anticipación, excepto que por causa debidamente justificada sea necesario acortar el término. En tal caso, la causa que justifique dicho proceder debe ser consignada en la notificación. Como señaláramos anteriormente, no sólo la causa para celebrar la vista dentro de un término menor estuvo justificada, sino que así lo hizo constar la agencia concernida. A esos fines, expresó lo siguiente:

> Conforme al número de querellas presentadas y de los hechos expresados en las mismas, es el criterio de este Departamento que de no atenderse esta situación a tiempo, se podría causar un grave daño inmediato a los consumidores que opcionaron las propiedades a la parte querellada desde los años 1997 y 1998. Estos se enfrentan a una posible cancelación de sus contratos de opción por parte de la querellada.

Si bien es cierto que el término establecido por la citada Sec. 3.9 de la LPAU es de cumplimiento estricto, no es menos cierto que se justifica que el mismo sea acortado en casos como el de autos, en los cuales unas familias no sólo están en riesgo inmediato de sufrir una pérdida económica, sino también en riesgo de ver frustrados sus sueños de establecer su hogar en la residencia anhelada.

Además, debemos notar que cinco días antes de la celebración de la primera vista y al solicitar la suspensión de ésta, Estancias Reales indicó que ya había hecho acopio de la prueba a ser presentada. No obstante, inconsistentemente, ahora alega que no tuvo la oportunidad de preparar su defensa. Ello nos sorprende aún más, dado el hecho de que fue Estancias Reales quien sin dar explicaciones o jus-

tificación alguna aumentó el precio de venta de las propiedades previamente opcionadas. Entendemos que al determinarse un incremento de $41,000 en el valor de una propiedad, el promitente y futuro vendedor debe tener a su haber toda la prueba que justifique dicho aumento, por lo que nos resulta inexplicable que Estancias Reales pretenda que acojamos su planteamiento de que no tuvo la oportunidad de preparar su caso.

Además, la vista fue suspendida en dos ocasiones distintas, brindando a Estancias Reales tiempo adicional para prepararse. D.A.Co. citó nuevamente a las partes y les apercibió que en la vista se discutirían las querellas en sus méritos. Finalmente, la vista se celebró el 30 de agosto de 2000, es decir, veintiún días después de haberse emitido la primera notificación, y se extendió cuatro días adicionales, celebrándose la última vista el 14 de septiembre de 2000.

Todas las circunstancias antes señaladas demuestran que D.A.Co. dio a Estancias Reales las garantías del debido proceso de ley. Luego de emitir la orden de cese y desista, D.A.Co. citó a las partes para discutir la procedencia de ésta. Para ello, tenía que considerar si el incremento en el precio de venta estuvo justificado, asunto central de las querellas presentadas. Al acudir ante D.A.Co., los peticionarios alegaron que Estancias Reales había incrementado de manera arbitraria e injustificada el precio de venta. Arguyeron que dicha actuación constituía un incumplimiento del contrato de opción y solicitaron que se le ordenara honrar el precio de venta originalmente pactado.

En vista de lo antes dicho, en casos como éste donde el asunto medular a ser discutido tanto respecto a la orden de cese y desista y las querellas en sus méritos es si el aumento en el precio de venta estuvo justificado, sería un trámite fútil celebrar ambas vistas por separado. De lo contrario, el trámite administrativo se apartaría de los objetivos primordiales por los cuales se crearon las agencias administrativas.

Por las razones que anteceden, se revoca la Resolución del Tribunal de Circuito de Apelaciones y se devuelve a dicho foro para que adjudique las controversias en sus méritos.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino.