EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lissette Gutiérrez Vázquez<br><br>        Peticionarios<br><br>          v.<br><br> José Víctor Hernández<br> Hernández, et al,<br><br>        Recurridos | Certiorari<br><br>2007 TSPR 174<br><br> 172 DPR _____ |

Número del Caso: CC-2006-1008


Fecha: 1 de octubre de 2007

Tribunal de Apelaciones:

          Región Judicial de Ponce-Panel IX

Juez Ponente:

          Hon. German J. Brau Ramírez


Abogados de la Parte Peticionaria:

          Lcdo. Rafael Fabre Carrasquillo
          Lcdo. Edgardo Pérez Gutiérrez

Abogado de la Parte Recurrida:

          Lcdo. Héctor E. Ramírez Carbó



Materia: Revisión de Decisión Administrativa del Departamento
          de Asuntos del Consumidor



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Lissette Gutiérrez Vázquez | | |
|---|---|---|
| Peticionarios | | |
| v. | | |
| José Víctor Hernández Hernández, *et al*, | | CC-2006-1008 |
| Recurridos | | |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

> Un acto procesal efectuado infringiendo la buena fe no puede desplegar la eficacia deseada por el litigante malicioso.[1]

San Juan, Puerto Rico, a 1 de octubre de 2007

Corresponde determinar en esta ocasión si se notificó adecuadamente la celebración de una vista administrativa ante D.A.C.O. y si la agencia administrativa actuó correctamente al celebrar la misma luego de solicitarse su suspensión.

**I.**

Los esposos José V. Hernández Hernández y Cristina Medina Ramos (esposos Hernández Medina), le vendieron una residencia que no habían terminado de construir a la señora Lissette Gutiérrez Vázquez (Sra. Gutiérrez). Ésta adquirió

---

[1] J. Picó I Junoy, *El principio de la buena fe procesal*, J.M. Bosch Editor, 2003.

la propiedad por el precio de $846,000.00, entregando un pronto de $30,000.00 y asumiendo la hipoteca a favor del Banco Santander de Puerto Rico (Banco Santander) que gravaba al inmueble. Los esposos Hernández Medina alegadamente le representaron a la Sra. Gutiérrez que "la casa era muy segura, que la construcción era de primera calidad, y que [unos] taludes [en] la parte posterior y lateral [de la propiedad] eran seguros y[a] que nunca había ocurrido un derrumbe."[2]

Luego de adquirir la propiedad, la Sra. Gutiérrez se percató que la construcción adolecía de serias deficiencias, defectos y vicios de construcción que le impedían residir la misma. En múltiples ocasiones la Sra. Gutiérrez le informó al Sr. Hernández los problemas estructurales que tenía la propiedad pero éste no corrigió los mismos.[3] Por lo anterior, el 28 de enero de 2005, la Sra. Gutiérrez presentó una querella ante el Departamento de Asuntos del Consumidor

---

[2] Resolución de D.A.C.O., determinación de hecho núm. 6, Apéndice al recurso de *certiorari*, pág. 79.

[3] De acuerdo a la Resolución emitida por D.A.C.O., la Sra. Gutiérrez le informó al Sr. Hernández los siguientes problemas: que luego de la compraventa "la sala y el comedor de la casa tenían agua por todo el piso;" que varias secciones del techo de la residencia tenían "fuertes manchas negras . . . con un olor muy fuerte;" que "el techo [de la residencia] no está terminado, [que tiene] escombros de cemento . . . [no] está sellado, hay cables sueltos, varillas, cemento, madera incrustada en las vigas de cemento y agua aposada [sic] en la mayor parte del techo;" que el pozo de agua en los predios de la propiedad se filtra; y que los derrumbes de los taludes estaban ocasionando daños a la propiedad. Resolución emitida por D.A.C.O., Apéndice al recurso de *certirari*, págs. 78-80.

(D.A.C.O.) contra los esposos Hernández Medina,[4] solicitando la resolución del contrato de compraventa suscrito por las partes, la devolución del dinero que le pagó a los esposos Hernández Medina, que se ordenara la entrega de la propiedad a los esposos Hernández Medina y que éstos asumieran el costo de cualquier escritura que fuera necesaria suscribir para materializar la resolución del contrato de compraventa.[5]

Oportunamente, los esposos Hernández Medina contestaron la querella presentada en su contra por la Sra. Gutiérrez. Luego de varios incidentes procesales, incluyendo varias suspensiones de vistas promovidas por los esposos Hernández Medina, D.A.C.O. reseñaló la vista del caso para el día 26 de enero de 2006.[6]

---

[4] La Sra. Gutiérrez enmendó posteriormente su querella original para entre otras cosas incluir al Banco Santander de Puerto Rico como parte interesada, por ser esta entidad financiera la que concedió el préstamo hipotecario para la compra de la propiedad. Apéndice al recurso de *certiorari* presentado por la Sra. Gutiérrez, págs. 26-27 y 35.

[5] En esencia, la Sra. Gutiérrez en su querella identificó entre otros problemas los siguientes: "falta de drenaje de agua en el patio, desprendimiento de tierra y piedras en el talúd [sic] lateral trasero, grietas en el muro lateral izquierdo, falta de muro de sostenimiento en el talúd [sic] lateral, falta de rejas para detener derrumbes de piedras y sedimento, construcción sin un estudio de suelo adecuado . . . falta de sistema adecuado para recolectar y disponer de las aguas pluviales en el talúd [sic] posterior, falta de sistema para evitar derrumbes en el talúd [sic] posterior, falta de sistema de drenaje en el muro de retención posterior para liberar la cantidad de agua y así evitar la presión hidrostática que esta pueda causar sobre el muro." Resolución emitida por D.A.C.O., Apéndice al recurso de *certirari*, pág. 75. *Véase además* querella enmendada de la Sra. Gutiérrez presentada ante D.A.C.O., Apéndice al recurso de *certiorari*, págs. 37-39.

[6] De acuerdo al expediente del presente recurso, la vista sobre el caso se había señalado para el día 26 de enero de 2006 **desde el 9 de noviembre de 2005**, luego que la actual representación legal de los esposos Hernández Medina

Tres días antes del señalamiento, específicamente el 23 de enero de 2006, el representante legal de los esposos Hernández Medina envió vía facsímile a D.A.C.O. una moción solicitando la suspensión de la vista.[7] De acuerdo a la Resolución emitida por D.A.C.O., en esta misma fecha éste acudió además a la agencia donde fue atendido por la Juez Administrativa que atendía el caso. Se desprende del expediente que el abogado le creó la falsa impresión a la Juez Administrativa de que la representación legal de la Sra.

_____

solicitara que la misma no se celebrara el 29 de noviembre de 2005 como había sido señalada. Notificación y Orden de D.A.C.O., Apéndice al recurso de *certiorari*, pág. 278. Posteriormente, este señalamiento fue dejado sin efecto por D.A.C.O. y en su lugar se reinstaló la fecha del 29 de noviembre de 2005 luego que la representación legal de la Sra. Gutiérrez le informara a la agencia administrativa que la representación legal de los esposos Hernández Medina informó incorrectamente que se habían puesto de acuerdo en cuanto a la fecha para celebrar ciertas deposiciones. Notificación y Orden de D.A.C.O., Apéndice al recurso de *certiorari*, págs. 283-284. En esta ocasión, se informó además que la fecha del 26 de enero de 2006 se utilizaría "para la continuación de la vista de ser necesario." *Id.* Así las cosas, la representación legal de los esposos Hernández Medina le informó a D.A.C.O. que no estaba preparada para representar adecuadamente a los esposos en la vista señalada para el 29 de noviembre de 2005. Por lo anterior, **el 23 de noviembre de 2005**, D.A.C.O. emitió nuevamente una Notificación y Orden donde informó que la vista a celebrarse el 29 de noviembre de 2005 sería una tipo conferencia con antelación a la vista administrativa mientras que la vista administrativa sería celebrada **"el 26 de enero de 2006 . . . fecha que ya había sido señalada para la vista y no fue objetada."** Apéndice al recurso de *certiorari*, pág. 287. (Énfasis suplido)

[7] Resolución emitida por D.A.C.O., Apéndice al recurso de *certiorari*, pág. 76. La representación legal de los esposos Hernández Medina solicitó la suspensión porque alegadamente la Sra. Gutiérrez no le había entregado las fotos de los defectos estructurales que tomó y la cinta de video de éstos que preparó. Apéndice al recurso de *certiorari*, pág. 289. De acuerdo al expediente, lo anterior fue entregado y recibido por el abogado de los esposos Hernández Medina el 24 de enero de 2006. Apéndice al recurso de *certiorari*, págs. 292-295.

Gutiérrez había accedido a la suspensión de la vista e incluso la invitó a hablar con el abogado indicándole que lo tenía disponible "en línea" para corroborar lo anterior.[8] Así, "[b]ajo esta falsa creencia, [la Juez Administrativa] procedió a suspender la vista administrativa verbalmente . . . [haciéndoselo] saber a las partes" el mismo día de la solicitud de suspensión, o sea, el 23 de enero de 2006.[9]

Luego de notificársele por teléfono la suspensión de la vista, la representación legal de la Sra. Gutiérrez objetó la suspensión concedida porque "desconocía la intención de la parte querellada de solicitar la suspensión y reseñalamiento" de la misma.[10] Ante lo anterior, la Juez Administrativa "tomó la determinación **el mismo día** de la notificación por vía telefónica a las partes de la suspensión, de dejar sin efecto la suspensión verbal y que permanezca en vigor la fecha . . . para la celebración de la vista administrativa . . . **que se había pactado por todas las partes desde el mes de noviembre de 2005.**"[11]  **Esta determinación se le comunicó**

---

[8] *Id.*

[9] *Id.*

[10] Resolución en Reconsideración emitida por D.A.C.O., Apéndice al recurso de *certiorari*, pág. 104.

[11] Resolución emitida por D.A.C.O., Apéndice al recurso de *certiorari*, págs. 76-77. (Énfasis suplido) De hecho, la Resolución también expresamente consigna que "[l]a suspensión [de la vista] y su correspondiente revocación y reinstalación de la fecha de [la] vista **fueron realizadas y notificadas el mismo día de concedidas.**" *Id.* pág. 77. (Énfasis suplido) Más aún, en su Resolución en Reconsideración, D.A.C.O. añade que lo anterior fue realizado el mismo día 23 de enero de 2006 **"con solo horas de diferencia,** por lo que no fue necesario plasmarlo por escrito." Apéndice al recurso de *certiorari*, pág. 104. (Énfasis suplido). Cabe señalar también que la representación legal de los esposos Hernández Medina reconoce lo anterior en la moción de reconsideración

**telefónicamente a las partes ese mismo día.**[12]  Insatisfecho,
el abogado de los esposos Hernández Medina acudió nuevamente
a D.A.C.O. "exigiendo una explicación sobre la determinación
tomada" y manifestando que como se le había notificado la
suspensión del señalamiento, su cliente no podría estar
disponible para la vista.  La Juez le comunicó que la vista
no sería suspendida y que se celebraría según pautado.

El 26 de enero de 2006, día de la vista, la
representación legal de los esposos Hernández Medina
compareció sin sus representados y planteó "que solo
comparecía por cortesía" manifestando que de celebrarse la
vista no estaría presente "por entender que la misma esta[ba]
suspendida."[13]  Argumentó una vez más a favor de la
suspensión de la vista por entender que no estaba preparado
para participar en la misma y porque alegadamente tenía otra
vista ese día en otro municipio.[14]  Luego de evaluar los

---

que presentó ante D.A.C.O. cuando hace referencia a "la
decisión de suspender la vista y la posterior decisión de
reinstalarla, **decisiones que ocurrieron según surge de la
resolución [de D.A.C.O.] el 23 de enero [de 2006]. . . ."**
Apéndice al recurso de *certiorari*, pág. 92.

[12] En su sentencia, el Tribunal de Apelaciones expresó que la
suspensión de la vista "fue notificada por teléfono a las
partes el 25 de enero de 2005 [sic]" y que ese mismo día
D.A.C.O., ante objeciones del abogado de la Sra. Gutiérrez,
determinó que el señalamiento de la vista continuaba en pie.
De acuerdo al tribunal apelativo, esta determinación se le
informó a las partes por teléfono este mismo día, a su
entender el 25 de enero de 2005.  Sentencia del Tribunal de
Apelaciones, Apéndice al recurso de *certiorari*, pág. 305.

[13] Resolución emitida por D.A.C.O., Apéndice al recurso de
*certiorari*, pág. 104.  *Véase además* Alegato presentado los
por los esposos Hernández Medina ante este Tribunal, pág. 6.

[14] La Resolución de D.A.C.O. consignó que "[l]a vista
administrativa en el Municipio de Ponce fue notificada al
abogado de [los esposos Hernández Medina] **con posterioridad a
la de este Departamento** por lo que esta [sic] tiene

planteamientos de esta parte y los de la representación legal de la Sra. Gutiérrez, la Juez Administrativa decidió continuar con los procedimientos. En desacuerdo, la representación legal de los esposos Hernández Medina se negó a participar en la vista y abandonó la misma. Por lo anterior, la Juez Administrativa determinó continuar la vista en rebeldía.

Así las cosas, D.A.C.O. declaró con lugar la querella presentada por la Sra. Gutiérrez contra los esposos Hernández Medina y ordenó la resolución del contrato entre las partes. Además, le ordenó a los esposos Hernández Medina la devolución a la Sra. Gutiérrez de ciertas prestaciones y el otorgamiento, a su costo, de cualquier escritura que fuese necesaria para materializar la resolución del contrato de compraventa y la cancelación de la hipoteca que grava al inmueble en controversia. Más aún, D.A.C.O. liberó a la Sra. Gutiérrez "de la responsabilidad de emitir los pagos subsiguientes correspondientes a la hipoteca sobre la residencia objeto de la presente querella."[15]

Oportunamente, los esposos Hernández Medina solicitaron reconsideración de la determinación anterior, la cual fue denegada por D.A.C.O. En desacuerdo, los esposos Hernández Medina y el Banco Santander acudieron al Tribunal de

_____
prioridad. En adición[,] este Departamento advino en conocimiento de que la [vista en Ponce] había sido suspendida y reseñalada para el mes de febrero con anterioridad a la moción de suspensión" presentada por el abogado ante D.A.C.O. Apéndice al recurso de *certiorari*, pág. 78. (Énfasis suplido)

[15] Notificación y Orden emitida por D.A.C.O. para aclarar su Resolución, Apéndice al recurso de *certiorari*, pág. 99.

Apelaciones. Dicho foro dejó sin efecto la resolución emitida por D.A.C.O. y devolvió el caso a la agencia para que concediera a los esposos Hernández Medina la oportunidad de defender su caso en una nueva vista administrativa. Razonó que la notificación de reinstalación de la vista **se realizó un día antes de la celebración de la misma**, por lo que fue inadecuada. Entendió que lo anterior impidió que los esposos Hernández Medina se prepararan para la vista ya que éstos habían descansado en su suspensión y "no estaban en posición de conseguir su prueba y estar preparad[os]."[16] Más aún, el tribunal expresó que

> [s]omos de la opinión que la agencia efectivamente erró al requerirle a los [esposos Hernández Medina] estar preparados para la vista, luego de que hubiera notificado su suspensión. Lo anterior equivalía a privar a los [esposos Hernández Medina] del plazo previo de notificación que requiere la Sección 3.9 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2159.
>
> .    .    .    .
>
> Reconocemos que la solicitud de suspensión del señalamiento fue presentada por los [esposos Hernández Medina] de forma tardía, fuera del término de cinco días con antelación a la vista establecido por la Sección 3.12 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2162. El D.A.C.O. muy bien pudo haber hecho caso omiso de dicha solicitud. No obstante la agencia optó por acoger la moción de suspensión y declararla con lugar, lo que fue notificado a las partes. En estas circunstancias, entendemos que el D.A.C.O. viene obligado a aceptar las consecuencias de su decisión.[17]

---

[16] Sentencia del Tribunal de Apelaciones, Apéndice al recurso de *certiorari*, pág. 310.
[17] *Id.*

Inconforme, la Sra. Gutiérrez acudió oportunamente ante este Tribunal mediante recurso de *certiorari*.[18] Expedimos el auto. Contando con la comparecencia de las partes, y estando en posición de resolver el recurso ante nuestra consideración, procedemos a así hacerlo.

---

[18] En el recurso presentado se señalaron los siguientes errores:

> PRIMER ERROR: Erró el Tribunal de Apelaciones en validar una solicitud de suspensión de vista administrativa incoada tres (3) días antes de la vista evidenciaria, en contravención a lo dispuesto por la Sección 3.12 de la Ley de Procedimiento Administrativo Uniforme y de la Regla 20 del Reglamento de Procedimiento Adjudicativo de DACO.

> SEGUNDO ERROR: Erró el Tribunal de Apelaciones y cometió abuso de discreción, apartándose de la información contenida en el expediente administrativo, al concluir que la suspensión de la vista se notificó por teléfono el día antes de su vista, o sea el 25 de enero de 2006, cuando la realidad es que la suspensión se notificó el mismo día en que fue solicitada, o sea el 23 de enero de 2006.

> TERCER ERROR: Erró el Tribunal de Apelaciones y cometió abuso de discreción, apartándose de la información contenida en el expediente administrativo, al concluir que el abogado de la querellante, aquí peticionaria, se comunicó con la Jueza Administrativa para expresarle que no estaba de acuerdo con la suspensión.

> CUARTO ERROR: Erró el Tribunal de Apelaciones y cometió abuso de discreción, apartándose de la información contenida en el expediente administrativo, al concluir que el querellado fue notificado de la reinstalación de la vista el día antes de la vista. Y al concluir que para ese momento el recurrido no estaba en posición de conseguir su prueba y estar preparada.

## II.

En su recurso, la Sra. Gutiérrez alegó que no procedía conceder la suspensión de la vista solicitada por la representación legal de los esposos Hernández Medina ya que ésta fue promovida mediante engaño y en contravención de la Sección 3.12 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2162, y la Regla Núm. 20 del Reglamento de Procedimientos Adjudicativos de D.A.C.O, Reglamento Núm. 6219 de 17 de noviembre de 2000. Además, sostiene que el Tribunal de Apelaciones fundamentó su determinación "cambiando las fechas en que ocurrieron los eventos [y] llegando a inferencias y conclusiones que se abstraen del expediente administrativo," específicamente al concluir que D.A.C.O. notificó la suspensión de la vista y su reinstalación el día antes de la misma, o sea el 25 de enero de 2006. Más aún, entiende que D.A.C.O. podía celebrar la vista en la fecha señalada ya que la notificación de la celebración de la misma fue una adecuada por haber sido realizada con tiempo suficiente, permitiéndole así a los esposos Hernández Medina prepararse para participar en la misma.

Por su parte, los esposos Hernández Medina sostienen que la Juez Administrativa suspendió y reinstaló la vista administrativa señalada para el 26 de enero de 2006 "sin cumplir con el reglamento o debido proceso de ley o

reglamentos promulgados por [D.A.C.O.]."[19] Específicamente, alegan que la agencia no cumplió con los requisitos de notificación establecidos por la sección 3.9 de la L.P.A.U., 3 L.P.R.A. sec. 2159, una vez decidió reinstalar la celebración de la vista administrativa que había suspendido y que la Juez Administrativa obligó comparecer a su representación legal a la celebración de una vista que no se les notificó apropiadamente. Por lo anterior, alegan que no pudieron prepararse adecuadamente para la vista que finalmente celebró D.A.C.O. en rebeldía. Veamos.

### A.

La revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de los organismos administrativos para asegurar que éstos ejercen sus funciones conforme la ley. *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263, 279 (1999). Esta revisión comprende en esencia lo siguiente: (1) la concesión del remedio apropiado; (2) la evaluación de las determinaciones de hecho conforme al criterio de la evidencia sustancial, y (3) la revisión completa y absoluta de las conclusiones de derecho. *Id.*, 279-280; *véase además* sección 4.5 de la L.P.A.U., 3 L.P.R.A. sec. 2175. En esta tarea, "[e]l expediente administrativo constituirá la base exclusiva . . . para la revisión judicial ulterior." *Mun. de San Juan v. J.C.A.*, *supra*, 280; *véase además* sección 3.18 de la L.P.A.U., 3 L.P.R.A. sec. 2168; *Magriz v. Empresas Nativas*, 143 D.P.R. 63 (1997). De hecho, los tribunales

---

[19] Alegato presentado ante este Tribunal por los esposos Hernández Medina, págs. 8 y 12.

apelativos, como tribunales de derecho, no tienen la facultad de realizar determinaciones sin base en el expediente de determinado caso ante su consideración. *Depto. Rec. v. Asoc. Rec. Round Hill*, 149 D.P.R. 91, 99 (1999).

Las determinaciones realizadas por las agencias administrativas merecen gran consideración y respeto. *Municipio de San Juan v. J.P.*, 169 D.P.R. ___, 2006 T.S.P.R. 155; *Hernández v. Centro Unido*, 168 D.P.R. ___, 2006 T.S.P.R. 131. De hecho, los procedimientos y las determinaciones administrativas están revestidos de una presunción de corrección y regularidad. *Id.* Por lo anterior, la parte que las impugne tiene que "demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración." *P.C.M.E. v. J.C.A.*, 166 D.P.R. ___, 2005 T.S.P.R. 202, *citando a Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 131 (1998).

De acuerdo a la L.P.A.U., las determinaciones de hechos de las agencias administrativas serán sostenidas si están fundamentadas por evidencia sustancial que obre en el expediente administrativo considerado en su totalidad. 3 L.P.R.A sec. 2175; *Hernández v. Centro Unido*, *supra*. Evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión." *Hernández v. Centro Unido*, *supra*; *Otero v.*

*Toyota*, 163 D.P.R. ___, 2005 T.S.P.R. 8. Los tribunales "no deben intervenir **o alterar** las determinaciones de hechos de un organismo administrativo," si éstas están sostenidas por evidencia sustancial que surja de la totalidad del expediente administrativo. *Otero v. Toyota*, *supra* (Énfasis suplido). Más aún, "de existir prueba conflictiva el Tribunal debe considerar como concluyente la determinación de hecho de la agencia" y "debe respet[ar] la determinación de credibilidad realizada" por ésta. *Padín Medina v. Administración de los Sistema de Retiro*, 172 D.P.R. ___, 2007 T.S.P.R. 146. Lo anterior evita que se sustituya el criterio del organismo administrativo en materia especializada por aquél del tribunal revisor. *Hernández v. Centro Unido*, *supra*; *Otero v. Toyota*, *supra*.

En cuanto a las conclusiones de derecho, la L.P.A.U. dispone que éstas pueden ser revisadas "en todos sus aspectos por el tribunal." 3 L.P.R.A sec. 2175. No obstante, los tribunales deben concederle gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y reglamentos que administran, por lo que no pueden descartar libremente las conclusiones e interpretación de la agencia, sustituyendo el criterio de éstas por el propio. *Hernández v. Centro Unido*, *supra*; *P.C.M.E. v. J.C.A.*, *supra*. Así, si la interpretación de la ley o reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales

debemos concederle deferencia. *Hernández v. Centro Unido*, *supra*.

**B.**

Con la aprobación de la L.P.A.U., la Asamblea Legislativa hizo extensivas a los procedimientos adjudicativos celebrados por las agencias administrativas ciertas garantías mínimas inherentes al debido proceso de ley. *Oficina del Comisionado de Seguros v. Asociación de Empleados del E.L.A.*, 171 D.P.R. ___, 2007 T.S.P.R. 112; *Almonte et al. v. Brito*, 156 D.P.R. 475, 482 (2002). Específicamente la Sección 3.1 de la L.P.A.U., 3 L.P.R.A. sec. 2151, al igual que la jurisprudencia interpretativa de la misma, reconoce en esencia en este tipo de adjudicación administrativa las siguientes garantías: (1) la concesión a una vista previa; (2) oportuna y adecuada notificación; (3) derecho a ser oído; (4) confrontarse con los testigos; (5) presentar prueba oral y escrita a su favor; y, (6) la presencia de un adjudicador imparcial. *Almonte et al. v. Brito*, *supra*, 482; *López y otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109, 114 (1996); *Magriz v. Empresas Nativas*, *supra*, 70; *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194 (1987).

En cuanto a la notificación de la vista administrativa, la Sección 3.9 de la L.P.A.U., 3 L.P.R.A. sec. 2159, estipula que lo anterior tiene que realizarse por escrito a todas las partes involucradas en el procedimiento administrativo, consignando la fecha, hora y el lugar donde se celebrará la

vista adjudicativa. *Almonte et al. v. Brito*, *supra*, 482; *Depto. Rec. v. Asoc. Rec. Round Hill*, *supra*. La notificación debe realizarse en un término no menor de quince (15) días de anticipación a la fecha de la vista, excepto que por causa debidamente justificada en la propia notificación, sea necesario acortar el referido término. 3 L.P.R.A. sec. 2159. Este término es uno de cumplimiento estricto que las agencias administrativas tienen que observar, y que los tribunales tienen que hacer valer. *Depto. Rec. v. Asoc. Rec. Round Hill*, *supra*, 99. Cabe señalar, que el propósito de esta disposición es permitir que las partes se preparen adecuadamente para la vista administrativa. *Almonte et al. v. Brito*, *supra*, 482; *Depto. Rec. v. Asoc. Rec. Round Hill*, *supra*, 98.

La L.P.A.U. permite que una parte involucrada en un procedimiento adjudicativo administrativo solicite la suspensión de una vista adjudicativa previamente señalada. Específicamente, la Sección 3.12 del estatuto, 3 L.P.R.A. sec. 2162, establece que "[e]l funcionario que presida el procedimiento adjudicativo no podrá suspender una vista ya señalada, excepto [cuando] se solicite por escrito con expresión de las causas que justifican dicha suspensión." La referida solicitud tiene que presentarse "con cinco (5) días de anticipación" a la fecha de la celebración de la vista administrativa. *Id*. Más aún, la parte que promueva la suspensión "deberá enviar copias de su solicitud a las demás

partes e interventores en el procedimiento, dentro de los cinco (5) días señalados." *Id*.

La normativa estatutaria anteriormente discutida fue incorporada al Reglamento de Procedimientos Adjudicativos de D.A.C.O., Reglamento Núm. 6219 de 17 de noviembre de 2000. Dicho Reglamento regula "las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores o por el [propio] Departamento." *Id*., Regla Núm. 3. El Reglamento proscribe además la forma en que se solicitarán las suspensiones de vistas administrativas previamente señaladas. Específicamente la Regla Núm. 20 del Reglamento establece lo siguiente:

> 20.1 Toda solicitud para transferencia y suspensión de vista deberá presentarse al Departamento: (1) inmediatamente que se conozca los fundamentos para la misma; y (2) **con no menos de cinco (5) días laborables de anticipación a la fecha señalada para la vista**, a menos que se trate de eventos no previsibles o fuera del control de parte solicitante.

> 20.2 Toda transferencia y suspensión de vista conllevará un cargo de 20.00 dólares por la parte solicitante, excepto cuando sean motivadas por el Departamento. El Juez Administrativo o el Oficial Examinador, si concede la suspensión, ordenará el pago correspondiente en un término de diez (10) días en la Oficina Regional más conveniente al obligado. El pago vendrá acompañado de una moción en cumplimiento de orden que deberá notificar a todas las partes.

> 20.3 Toda solicitud de suspensión deberá venir debidamente fundamentada conteniendo la evidencia acrediticia de las razones para la misma y expresar tres (3) fechas alternas dentro de los quince (15) días siguientes a partir de la fecha señalada para la vista. El Funcionario que presida la vista podrá imponer sanciones a tenor con la Regla 22 de este Reglamento cuando no se cumpla con el

> procedimiento establecido en esta regla o se utilice con el motivo [de] dilatar los procedimientos.

Regla Núm. 20, Reglamento de Procedimientos Adjudicativos de D.A.C.O., Reglamento Núm. 6219 de 17 de noviembre de 2000. (Énfasis suplido)

Es importante señalar, que de acuerdo a la L.P.A.U., el funcionario que preside determinado procedimiento adjudicativo tiene la facultad de declarar a una parte en rebeldía de esta no comparecer a cualquier etapa de los procedimientos adjudicativos. 3 L.P.R.A. sec. 2160. Específicamente, el estatuto dispone que "[s]i una parte debidamente citada no comparece a la conferencia con antelación a la vista, a la vista o a cualquier otra etapa durante el procedimiento adjudicativo el funcionario que presida la misma podrá declararla en rebeldía." *Id*. Éste podrá "continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible." *Id*.

### III.

Habiendo expuesto y discutido la normativa aplicable al caso de autos, pasamos a resolver la controversia ante nuestra consideración.

Como adelantáramos, la Sra. Gutiérrez alegó en su recurso que no procedía conceder la suspensión de la vista solicitada por la representación legal de los esposos Hernández Medina ya que ésta fue promovida mediante engaño y

en contravención de la Sección 3.12 de la L.P.A.U., *supra*, y la Regla Núm. 20 del Reglamento de Procedimientos Adjudicativos de D.A.C.O, *supra*,. Además, sostiene que el foro apelativo intermedio fundamentó su determinación "cambiando las fechas en que ocurrieron los eventos [y] llegando a inferencias y conclusiones que se abstraen del expediente administrativo," específicamente al concluir que D.A.C.O. notificó la suspensión de la vista y su reinstalación el día antes de la misma, o sea el 25 de enero de 2006. Más aún, entiende que D.A.C.O. podía celebrar la vista en la fecha señalada ya que la notificación de la celebración de la misma fue una adecuada por haber sido realizada con tiempo suficiente, permitiéndole así a los esposos Hernández Medina prepararse para participar en la misma.

Por su parte, los esposos Hernández Medina sostienen que la Juez Administrativa suspendió y reinstaló la vista administrativa señalada para el 26 de enero de 2006 "sin cumplir con el reglamento o debido proceso de ley o reglamentos promulgados por [D.A.C.O.]."[20] Específicamente, alegan que la agencia no cumplió con los requisitos de notificación establecidos por la sección 3.9 de la L.P.A.U., *supra*, una vez decidió reinstalar la celebración de la vista administrativa que había suspendido y que la Juez Administrativa obligó comparecer a su representación legal a la celebración de una vista que no se les notificó

---

[20] Alegato presentado ante este Tribunal por los esposos Hernández Medina, págs. 8 y 12.

apropiadamente. Por lo anterior, alegan que no pudieron prepararse adecuadamente para la vista que finalmente celebró D.A.C.O. en rebeldía.

La Sra. Gutiérrez presentó una querella ante D.A.C.O. contra los esposos Hernández Medina por alegados vicios de construcción en la propiedad que éstos le vendieron. Luego de varios incidentes procesales, incluyendo suspensiones de la vista administrativa promovidas por los esposos Hernández Medina, D.A.C.O. determinó el **23 de noviembre de 2005** señalar la vista adjudicativa del caso para el día **26 de enero de 2006**. Posteriormente, la representación legal de los esposos Hernández Medina solicitó la suspensión de la referida vista el **23 de enero de 2006**, o sea, **tres días antes** de la fecha establecida por D.A.C.O. para su celebración. Este mismo día, la Juez Administrativa concedió la suspensión solicitada bajo la creencia, inducida por el abogado de los esposos Hernández Medina, de que el abogado de la Sra. Gutiérrez estaba conforme con la misma. Sin embargo, luego que el abogado de la Sra. Gutiérrez le informara que no estaba de acuerdo con la suspensión, la Juez Administrativa, "para evitar dilatar aún más los procedimientos . . . tomó la determinación **el mismo día de la notificación por vía telefónica a las partes de la suspensión**, de dejar sin efecto la suspensión verbal y que permanezca en vigor la fecha . . .

para la celebración de la vista . . . pactad[a] por todas las partes . . . desde el mes de noviembre de 2005."[21]

A la luz del expediente del presente caso, entendemos que no existe controversia en cuanto a que la solicitud de la suspensión de la vista fue presentada ante D.A.C.O. el 23 de enero 2006 y que **en esta misma fecha** se le informó a las partes que se había concedido y posteriormente revocado la misma. No obstante, el Tribunal de Apelaciones concluyó en su sentencia que la Juez Administrativa notificó su determinación de conceder y revocar la suspensión de la vista el 25 de enero de 2006, o sea un día antes de la fecha establecida para la celebración de la vista. Por lo anterior, dicho foro razonó que D.A.C.O. no había notificado adecuadamente a los esposos Hernández Medina sobre la celebración de la vista que había accedido a suspender ya que no lo hizo con quince (15) días de antelación a la misma, como estipula la sección 3.9 de la L.P.A.U., *supra*. Entendió que lo anterior provocó que los esposos Hernández Medina no pudieran prepararse para participar en la vista ya que habían descansado en la suspensión concedida.

La determinación realizada por el Tribunal de Apelaciones se fundamentó en fechas de eventos procesales distintas a las que refleja el expediente del presente recurso. Esto contraviene la norma de que en el ejercicio de la función revisora de los tribunales "[e]l expediente administrativo constituirá la base exclusiva . . . para la

_____

[21] Resolución emitida por D.A.C.O., Apéndice al recurso de *certiorari*, págs. 76-77. (Énfasis suplido)

revisión judicial ulterior." *Mun. de San Juan v. J.C.A.*, *supra*, 280; *véase además* sección 3.18 de la L.P.A.U., *supra*; *Magriz v. Empresas Nativas*, *supra*. De hecho, conocido es que el foro apelativo intermedio, como tribunal de derecho, no tiene la facultad de realizar determinaciones sin base en el expediente de determinado caso ante su consideración. *Depto. Rec. v. Asoc. Rec. Round Hill*, *supra*, 99. El tribunal de apelaciones tenía que tener presente que "de existir prueba conflictiva [debía] considerar como concluyente la determinación de hecho de la agencia" y que "debe respet[ar] la determinación de credibilidad realizada" por ésta. *Padín Medina v. Administración de los Sistema de Retiro*, *supra*. A la luz de lo anterior, entendemos que el Tribunal de Apelaciones erró al concluir que la notificación de la suspensión de la vista y su posterior revocación fue realizada el día antes de celebrarse la misma, situación que contrasta con las determinaciones que sobre el particular realizó D.A.C.O. y más aún, la totalidad del expediente del caso.

Como habíamos indicado, del expediente del presente caso se desprende que la fecha del 26 de enero de 2006 señalada por D.A.C.O. para la celebración de la vista adjudicativa en controversia, había sido establecida por acuerdo entre las partes y notificada por la agencia administrativa desde el 23 de noviembre de 2005. Cabe señalar que la referida vista, había sido anteriormente señalada y suspendida en varias ocasiones a instancia de los esposos Hernández Medina. De

otra parte, la suspensión de la vista que origina la controversia ante nuestra consideración y su posterior revocación fueron realizadas y notificadas el mismo día de solicitada y concedida, o sea el 23 de enero de 2006. De hecho, esta solicitud de suspensión de vista administrativa fue presentada por el abogado de los esposos Hernández Medina contrario a lo establecido por la L.P.A.U. y el Reglamento de Procedimientos Adjudicativos de D.A.C.O. que establecen que ésta tenía que presentarse cinco (5) días antes de la fecha en que se celebraría la vista administrativa. Sec. 3.12 de la L.P.A.U., 3 L.P.R.A. sec. 2162; Regla Núm. 20 del Reglamento de Procesos Adjudicativos de D.A.C.O., *supra*. Al así proceder, la representación legal de los esposos Hernández Medina se expuso a las consecuencias de su falta de diligencia en el trámite que debió seguir en relación a la querella presentada contra sus representados.

A la luz de lo discutido anteriormente, entendemos que la conclusión del tribunal apelativo de que la reinstalación de la vista infringió el debido proceso de ley de la parte querellada al alegadamente no poder prepararse adecuadamente para defender su caso, es una irrazonable. La representación legal de los esposos Hernández Medina conocía desde noviembre de 2005 que la vista ante D.A.C.O. se celebraría el 26 de enero de 2006, por lo que tuvo tiempo suficiente con antelación a la celebración de la vista, aproximadamente dos meses, para prepararse y participar en los procedimientos celebrados ante D.A.C.O. en relación a la querella presentada

por la Sra. Gutiérrez. De hecho, las fotos y el video de los alegados daños sufridos por la Sra. Gutiérrez, prueba que alegadamente necesitaba para prepararse adecuadamente para participar en la vista y cuya ausencia motivó la solicitud de suspensión de vista, le fue entregada por el abogado de la querellante el 24 de enero de 2006, o sea dos días antes de la celebración de la vista.

En esencia, estamos ante una situación en la que D.A.C.O. meramente se retractó de la concesión de una suspensión de vista, reinstalando la misma el mismo día de su solicitud y concesión, por lo que entendemos que no era necesario notificar nuevamente la fecha de la celebración de la misma conforme requiere la sección 3.9 de la L.P.A.U., *supra*. Además, D.A.C.O. tuvo ante su consideración una solicitud de suspensión que incumplió los requisitos estatutarios y reglamentarios para su presentación, por lo que entendemos que la misma no debió ni tan siquiera ser considerada por la Juez Administrativa que tenía ante su consideración la querella presentada por la Sra. Gutiérrez. A la luz de los hechos del presenta caso, la celebración de la vista se mantuvo en pie según lo pautado por D.A.C.O. desde noviembre de 2005. Así, el abogado de los esposos Hernández Medina tenía el deber de acudir y participar efectivamente en la vista que celebró D.A.C.O. Al no realizar lo anterior, llegando al punto de acudir por mera cortesía y posteriormente abandonar los procedimientos, D.A.C.O. se vio en la necesidad de no dilatar más la

consideración del caso y continuar el mismo en rebeldía conforme como le permite la L.P.A.U. 3 L.P.R.A. sec. 2160.

Finalmente, debemos expresar que la conducta desplegada por el abogado de los esposos Hernández Medina no es el mejor ejemplo de aquella necesaria para adecuadamente representar y proteger los intereses de un cliente. Ésta sin lugar a dudas, atenta contra los principios básicos de la buena fe procesal que deben estar presentes en todo procedimiento adjudicativo, ya sea judicial o administrativo, en aras de "preservar un mínimo de conducta ética en todas las relaciones jurídicas." J. Picó I Junoy, *El principio de la buena fe procesal*, J.M. Bosch Editor, 2003, pág. 28. Así, de ninguna forma "puede alentar[se] la conducta maliciosa o fraudulenta de las partes, ni permitir que venza el más diestro en el uso de las normas procesales, sino el que tenga más razón." *Id*., pág. 27. En esencia, es nuestra función asegurarnos que quien prevalezca lo hace con honestidad, esto es, con buena fe procesal. Conforme lo anterior, todo abogado tiene que tener presente que "[n]o instar una determinada actuación procesal en el momento procesal oportuno, con el objetivo malicioso de realizarlo fuera de su plazo legal para beneficiarse así de una situación privilegiada y ventajosa frente a la contraparte, solo puede tener como consecuencia su más pleno rechazo, esto es, su inadmisión." *Id*., pág. 266. Con lo cual, un acto procesal efectuado infringiendo la buena fe, como evidentemente ha ocurrido en el presente caso, "no puede desplegar la eficacia

deseada por el litigante malicioso." *Id.*, pág. 266. Y es que así tiene que ser, pues de lo contrario, el principio de la buena fe --principio que despliega su eficacia en todo el Derecho--quedaría como mera proclamación de un ideal al que aspirar, sin mecanismo de protección tendente a potenciar su virtualidad práctica.

**IV.**

Por los fundamentos anteriormente discutidos, procede dictar sentencia resolviendo que D.A.C.O. actuó correctamente al celebrar la vista administrativa en controversia en el día que había señalado y notificado oportunamente. Conforme lo anterior, se revoca la sentencia recurrida emitida por el Tribunal de Apelaciones y se reinstala la determinación de D.A.C.O. en relación a la querella de vicios ocultos presentada por la Sra. Gutiérrez.

Se dictara sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lissette Gutiérrez Vázquez

     Peticionaria

       v.

José Víctor Hernández Hernández,     CC-2006-1008
*et al*,

     Recurridos

SENTENCIA

San Juan, Puerto Rico, a 1 de octubre de 2007

Por los fundamentos anteriormente expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se revoca la sentencia recurrida emitida por el Tribunal de Apelaciones y se reinstala la determinación de D.A.C.O. en relación a la querella de vicios ocultos presentada por la Sra. Gutiérrez.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rivera Pérez no intervino.

Dimarie Alicea Lozada
Secretaria del Tribunal Supremo Interina