La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
Un acto procesal efectuado infrin-giendo la buena fe no puede des-plegar la eficacia deseada por el litigante malicioso.(1)
Corresponde determinar en esta ocasión si se notificó adecuadamente la celebración de una vista administrativa ante el Departamento de Asuntos del Consumidor (D.A.Co.) y si la agencia administrativa actuó correcta-mente al celebrarla luego de solicitarse su suspensión.
I
Los esposos José V. Hernández Hernández y Cristina Medina Ramos (esposos Hernández Medina) le vendieron una residencia que no habían terminado de construir a la Sra. Lissette Gutiérrez Vázquez (señora Gutiérrez). Ésta adquirió la propiedad por el precio de $846,000 entregando un pronto de $30,000 y asumiendo la hipoteca a favor del Banco Santander de Puerto Rico (Banco Santander) que gravaba al inmueble. Los esposos Hernández Medina ale-gadamente le representaron a la señora Gutiérrez que “la casa era muy segura, que la construcción era de primera calidad, y que [unos] taludes [en] la parte posterior y lateral [de la propiedad] eran seguros [ya] que nunca había ocurrido un derrumbe”.(2)
Luego de adquirir la propiedad, la señora Gutiérrez se percató que la construcción adolecía de serias deficiencias, defectos y vicios de construcción que le impedían residir en *237 ella. En múltiples ocasiones la señora Gutiérrez le informó al señor Hernández los problemas estructurales que tenía la propiedad, pero éste no los corrigió.(3) Por lo anterior, el 28 de enero de 2005 la señora Gutiérrez presentó una que-rella ante D.A.Co. contra los esposos Hernández Medina,(4) solicitando la resolución del contrato de compraventa sus-crito por las partes, la devolución del dinero que le pagó a los esposos Hernández Medina, la orden de entrega de la propiedad a los esposos Hernández Medina y que éstos asumieran el costo de cualquier escritura que fuera nece-saria suscribir para materializar la resolución del contrato de compraventa. (5)
Oportunamente, los esposos Hernández Medina contes-taron la querella presentada en su contra por la señora Gutiérrez. Luego de varios incidentes procesales, inclu-yendo varias suspensiones de vistas promovidas por los es- *238 posos Hernández Medina, D.A.Co. reseñaló la vista del caso para el 26 de enero de 2006.(6)
Tres días antes del señalamiento, específicamente el 23 de enero de 2006, el representante legal de los esposos Her-nández Medina envió vía facsímile a D.A.Co. una moción para la suspensión de la vista.(7) De acuerdo con la Reso-lución emitida por D.A.Co., en esta misma fecha también acudió a la agencia donde fue recibido por la Juez Admi-nistrativa que atendía el caso. Se desprende del expediente que el abogado le creó la falsa impresión a la Juez Admi-nistrativa de que la representación legal de la señora Gutiérrez había accedido a la suspensión de la vista e, in-cluso, la invitó a hablar con el abogado y le indicó que lo tenía disponible “en línea” para corroborar lo anterior.(8) Así, “[b]ajo esta falsa creencia, [la Juez Administrativa] procedió a suspender la vista administrativa verbalmente *239 ... [haciéndolo] saber a las partes” el mismo día de la soli-citud de suspensión, o sea, el 23 de enero de 2006.(9)
Luego de notificársele por teléfono la suspensión de la vista, la representación legal de la señora Gutiérrez objetó la suspensión concedida porque “desconocía de la intención de la parte querellada de solicitar la suspensión y reseña-lamiento de la vista ...”.(10) Ante lo anterior, la Juez Admi-nistrativa “torn [ó] la determinación el mismo día de la no-tificación por vía telefónica a las partes de la suspensión, de dejar sin efecto la suspensión verbal y que permanezca en vigor la fecha ... para la celebración de la vista admi-nistrativa ... que se había pactado por todas las partes desde el mes de noviembre de 2005”. (Enfasis suplido.(11) Esta determinación se comunicó telefónicamente a las par-tes ese mismo día.(12) Insatisfecho, el abogado de los espo-sos Hernández Medina acudió nuevamente a D.A.Co. “exi-giendo una explicación sobre la determinación tomada” y manifestando que, como se le había notificado la suspen-sión del señalamiento, su cliente no podría estar disponible *240 para la vista. La juez le comunicó que la vista no sería suspendida y que se celebraría según pautada.
El 26 de enero de 2006, día de la vista, la representación legal de los esposos Hernández Medina compareció sin sus representados y planteó “que s[ó]lo comparecía por corte-sía”, manifestando que de celebrarse la vista no estaría presente “por entender que la misma esta[ba] suspendida”.(13) Argumentó una vez más a favor de la sus-pensión de la vista por entender que no estaba preparado para participar en ésta y alegó que tenía otra vista ese día en otro municipio.(14) Luego de evaluar los planteamientos de esta parte y los de la representación legal de la señora Gutiérrez, la Juez Administrativa decidió continuar con los procedimientos. En desacuerdo, la representación legal de los esposos Hernández Medina se negó a participar en la vista y la abandonó. Por lo anterior, la Juez Administrativa determinó continuar la vista en rebeldía.
Así las cosas, D.A.Co. declaró “con lugar” la querella presentada por la señora Gutiérrez contra los esposos Her-nández Medina y ordenó la resolución del contrato entre las partes. Además, le ordenó a los esposos Hernández Medina la devolución a la señora Gutiérrez de ciertas presta-ciones y el otorgamiento, a su costo, de cualquier escritura que fuese necesaria para materializar la resolución del contrato de compraventa y la cancelación de la hipoteca que grava al inmueble en controversia. Más aún, D.A.Co. liberó a la señora Gutiérrez “de la responsabilidad de emi- *241 tir los pagos subsiguientes correspondientes a la hipoteca sobre la residencia objeto de la presente querella ...”.(15)
Oportunamente, los esposos Hernández Medina solici-taron una reconsideración de la determinación anterior, la cual D.A.Co. denegó. En desacuerdo, los esposos Hernán-dez Medina y el Banco Santander acudieron al Tribunal de Apelaciones. Dicho foro dejó sin efecto la resolución emi-tida por D.A.Co. y devolvió el caso a la agencia para que concediera a los esposos Hernández Medina la oportunidad de defender su caso en una nueva vista administrativa. Razonó que la notificación de reinstalación de la vista se realizó un día antes de la celebración de ésta, por lo que fue inadecuada. Entendió que lo anterior impidió que los espo-sos Hernández Medina se prepararan para la vista, ya que éstos habían descansado en su suspensión y “no estaba [n] en posición de conseguir su prueba y estar prepa-rad[os]”.(16) Más aún, el tribunal expresó:
Somos de la opinión que la agencia efectivamente erró al requerirle a los [esposos Hernández Medina] estar preparados para la vista, luego de que hubiera notificado su suspensión. Lo anterior equivalía a privar a los [esposos Hernández Medina] del plazo previo de notificación que requiere la Sec-ción 3.9 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2159.
Reconocemos que la solicitud de suspensión del señala-miento fue presentada por los [esposos Hernández Medina] de forma tardía, fuera del término de cinco días con antelación a la vista establecido por la sección 3.12 de la Ley de Procedi-miento Administrativo Uniforme, 3 L.P.R.A. see. 2162. El D.A.C.O. muy bien pudo haber hecho caso omiso de dicha solicitud. No obstante, la agencia optó por acoger la moción de suspensión y declararla con lugar, lo que fue notificado a las partes. En estas circunstancias, entendemos que el D.A.C.O. viene obligado a aceptar las consecuencias de su decisión.(17)
*242 Inconforme, la señora Gutiérrez acudió oportunamente ante este Tribunal mediante un recurso de certiorari.(18) Expedimos el auto. Al contar con la comparecencia de las partes y estar en posición de resolver el recurso ante nues-tra consideración, procedemos a así hacerlo.
II
En su recurso, la señora Gutiérrez alegó que no proce-día conceder la suspensión de la vista solicitada por la re-presentación legal de los esposos Hernández Medina ya que ésta fue promovida mediante engaño y en contraven-ción de la Sección 3.12 de la Ley de Procedimiento Admi-nistrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. see. 2162, y la Regla 20 del Re-glamento de Procedimientos Adjudicativos del Departa-mento de Asuntos del Consumidor, Reglamento Núm. 6219, Departamento de Estado, 17 de noviembre de 2000 (Reglamento de D.A.Co.). Además, sostiene que el Tribunal de Apelaciones fundamentó su determinación “cambiando las fechas en que ocurrieron los eventos [y] llegando a in- *243 ferencias y conclusiones que se abstraen del expediente ad-ministrativo”, específicamente al concluir que D.A.Co. no-tificó la suspensión de la vista y su reinstalación el día antes de ésta, o sea el 25 de enero de 2006. Más aún, en-tiende que D.A.Co. podía celebrar la vista en la fecha se-ñalada, ya que la notificación de su celebración fue ade-cuada por haber sido realizada con tiempo suficiente, lo que permitió a los esposos Hernández Medina prepararse para participar en ella.
Por su parte, los esposos Hernández Medina sostienen que la Juez Administrativa suspendió y reinstaló la vista administrativa señalada para el 26 de enero de 2006 “sin cumplir con el reglamento o debido proceso de ley o regla-mentos promulgados por [D.A.Co.]”.(19) Específicamente, alegan que la agencia no cumplió con los requisitos de no-tificación establecidos por la Sección 3.9 de la L.P.A.U., 3 L.P.R.A. see. 2159, una vez decidió reinstalar la celebración de la vista administrativa que había suspendido y que la Juez Administrativa obligó a que su representación legal compareciera a la celebración de una vista que no notificó apropiadamente. Por lo anterior, alegan que no pudieron prepararse de forma adecuada para la vista que final-mente celebró D.A.Co. en rebeldía. Veamos.
A. La revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de los organismos administrativos para asegurar que éstos ejercen sus funciones conforme la ley. Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279 (1999). Esta revisión comprende, en esencia, lo siguiente: (1) la concesión del remedio apropiado; (2) la evaluación de las determinaciones de hecho conforme al criterio de la evidencia sustancial, y (3) la revisión completa y absoluta de las conclusiones de *244 derecho. íd., págs. 279-280. Véase, además, Sección 4.5 de la L.P.A.U., 3 L.P.R.A. sec. 2175. En esta tarea, “[e]l expe-diente administrativo constituirá la base exclusiva ... para la revisión judicial ulterior”. Mun. de San Juan v. J.C.A., supra, pág. 280. Véanse, además: Sección 3.18 de la L.P.A.U., 3 L.P.R.A. sec. 2168; Magriz v. Empresas Nativas, 143 D.P.R. 63 (1997). De hecho, los tribunales apelativos, como tribunales de derecho, no tienen la facultad de reali-zar determinaciones sin base en el expediente de determi-nado caso ante su consideración. Depto. Rec. v. Asoc. Rec. Round Hill, 149 D.P.R. 91, 99 (1999).
Las determinaciones realizadas por las agencias administrativas merecen gran consideración y respeto. Mun. San Juan v. Plaza Las Américas, 169 D.P.R. 310 (2006); Hernández, Álvarez v. Centro Unido, 168 D.P.R. 592 (2006). De hecho, los procedimientos y las determinaciones administrativas están revestidos de una presunción de corrección y regularidad. íd. Por lo anterior, la parte que las impugne tiene que “ ‘demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración’ ”. (Énfasis suprimido.) P.C.M.E. v. J.C.A., 166 D.P.R. 599, 616 (2005), citando a Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 131 (1998).
De acuerdo con la L.P.A.U., las determinaciones de hechos de las agencias administrativas serán sostenidas si están fundamentadas por evidencia sustancial que obre en el expediente administrativo considerado en su totalidad. 3 L.P.R.A. see. 2175; Hernández, Álvarez v. Centro Unido, supra. Evidencia sustancial es “ ‘aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión’ ”. Hernández, Álvarez v. Centro Unido, supra, pág. 615. Véase Otero v. Toyota, 163 D.P.R. 716 (2005). Los tribunales “no deben *245 intervenir o alterar las determinaciones de hechos de un organismo administrativo” si éstas están sostenidas por evidencia sustancial que surja de la totalidad del expe-diente administrativo. (Énfasis suplido.) Otero v. Toyota, supra, pág. 727. Más aún, “ ‘de existir prueba conflictiva!,] el Tribunal debe considerar como concluyente la determi-nación de hecho de la agencia’ ” y “ ‘respet[ar] la determi-nación de credibilidad realizada’ ” por ésta. Padín Medina v. Adm. Sist. Retiro, 171 D.P.R. 950 (2007). Lo anterior evita que se sustituya el criterio del organismo administra-tivo en materia especializada por el del tribunal revisor. Hernández, Álvarez v. Centro Unido, supra; Otero v. Toyota, supra.
En cuanto a las conclusiones de derecho, la L.P.A.U. dispone que pueden ser revisadas “en todos sus aspectos por el tribunal”. 3 L.P.R.A. sec. 2175. No obstante, los tribunales deben conceder gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y los reglamentos que administran, por lo que no pueden descartar libremente las conclusiones e interpretación de la agencia, sustituyendo el criterio de éstas por el propio. Hernández, Álvarez v. Centro Unido, supra; P.C.M.E. v. J.C.A., supra. Así, si la interpretación de la ley o el reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales debemos concederle deferencia. Hernández, Álvarez v. Centro Unido, supra.
B. Con la aprobación de la L.P.A.U., la Asamblea Legislativa extendió a los procedimientos adjudicativos celebrados por las agencias administrativas ciertas garantías mínimas inherentes al debido proceso de ley. Com. de Seguros v. A.E.E.L.A., 171 D.P.R. 514 (2007); Almonte et al. v. Brito, 156 D.P.R. 475, 482 (2002). Específicamente, la Sección 3.1 de la L.P.A.U., 3 L.P.R.A. sec. 2151, al igual que su jurisprudencia interpretativa, reconoce en este tipo de adjudicación administrativa, en esencia, las siguientes ga- *246 rantías: (1) la concesión a una vista previa; (2) oportuna y adecuada notificación; (3) derecho a ser oído; (4) confron-tarse con los testigos; (5) presentar prueba oral y escrita a su favor, y (6) la presencia de un adjudicador imparcial. Almonte et al. v. Brito, supra, pág. 482; López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 114 (1996); Magriz v. Empresas Nativas, supra, pág. 70; Henríquez v. Consejo Educación Superior, 120 D.P.R. 194 (1987).
En cuanto a la notificación de la vista administrativa, la Sección 3.9 de la L.P.A.U., supra, estipula que lo anterior tiene que realizarse por escrito a todas las partes involucradas en el procedimiento administrativo, consignando la fecha, la hora y el lugar donde se celebrará la vista adjudicativa. Almonte et al. v. Brito, supra, pág. 482; Depto. Rec. v. Asoc. Rec. Round Hill, supra. La notificación debe realizarse en un término no menor de quince días de anticipación a la fecha de la vista, excepto que por causa debidamente justificada en la propia notificación, sea necesario acortar el referido término. 3 L.P.R.A. sec. 2159. Este término, de cumplimiento estricto, las agencias administrativas tienen que observarlo y los tribunales tienen que hacerlo valer. Depto. Rec. v. Asoc. Rec. Round Hill, supra, pág. 99. Cabe señalar, que el propósito de esta disposición es permitir que las partes se preparen adecuadamente para la vista administrativa. Almonte et al. v. Brito, supra, pág. 482; Depto. Rec. v. Asoc. Rec. Round Hill, supra, pág. 98.
La L.P.A.U. permite que una parte involucrada en un procedimiento adjudicativo administrativo solicite la suspensión de una vista adjudicativa previamente señalada. Específicamente, la referida Sección 3.12 del estatuto establece que “[e]l funcionario que presida el procedimiento adjudicativo no podrá suspender una vista ya señalada, excepto [cuando] se solicite por escrito con expresión de las causas que justifican dicha suspensión”. 3 L.P.R.A. sec. 2162. La referida solicitud tiene que presen- *247 tarse “con cinco (5) días de anticipación” a la fecha de la celebración de la vista administrativa. Id. Más aún, la parte que promueva la suspensión “deberá enviar copias de su solicitud a las demás partes e interventores en el proce-dimiento, dentro de los cinco (5) días señalados.” íd.
La normativa estatutaria anteriormente discutida fue incorporada al Reglamento de D.A.Co. Dicho reglamento regula “las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores o por el [propio] Departamento”. Regla 3 del Reglamento de D.A.Co., pág. 1. El reglamento proscribe además la forma en que se solicitarán las suspensiones de vistas administrativas previamente señaladas. Específicamente, la Regla 20 del Reglamento de D.A.Co. establece lo siguiente:
20.1 Toda solicitud para transferencia y suspensión de vista deberá presentarse al Departamento: (1) inmediatamente que se conozca los fundamentos para la misma; y (2) con no menos de cinco (5) días laborables de anticipación a la fecha señalada para la vista, a menos que se trate de eventos no previsibles o fuera del control de parte solicitante.
20.2 Toda transferencia y suspensión de vista conllevará un cargo de 20.00 dólares por la parte solicitante, excepto cuando sean motivadas por el Departamento. El Juez Administrativo o el Oficial Examinador, si concede la suspensión, ordenar [á] el pago correspondiente en un término de diez (10) días en la Oficina Regional más conveniente al obligado. El pago vendrá acompañado de una moción en cumplimiento de orden que de-berá notificar a todas las partes.
20.3 Toda solicitud de suspensión deberá venir debidamente fundamentada conteniendo la evidencia acrediticia de las ra-zones para la misma y expresar tres (3) fechas alternas dentro de los quince (15) días siguientes a partir de la fecha señalada para la vista. El Funcionario que presida la vista podrá impo-ner sanciones a tenor con la Regla 22 de este Reglamento cuando no se cumpla con el procedimiento establecido en esta regla o se utilice con el motivo [de] dilatar los procedimientos. (Énfasis suplido.) Regla 20 del Reglamento de D.A.Co., pág. 9.
Es importante señalar que, de acuerdo con la L.P.A.U., el funcionario que preside determinado procedí- *248 miento adjudicativo tiene la facultad de declarar a una parte en rebeldía si ésta no comparece a cualquier etapa de los procedimientos adjudicativos. 3 L.P.R.A. sec. 2160. Es-pecíficamente, el estatuto dispone que “[s]i una parte debi-damente citada no comparece a la conferencia con antela-ción a la vista, a la vista o a cualquier otra etapa durante el procedimiento adjudicativo [,] el funcionario que presida la misma podrá declararla en rebeldía”. Id. Este funciona-rio podrá “continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible”. Íd.
III
Habiendo expuesto y discutido la normativa aplicable al caso de autos, pasamos a resolver la controversia ante nuestra consideración.
Como adelantáramos, la señora Gutiérrez alegó en su recurso que no procedía conceder la suspensión de la vista solicitada por la representación legal de los esposos Her-nández Medina, ya que ésta fue promovida mediante en-gaño y en contravención a la Sección 3.12 de la L.P.A.U., supra, y a la Regla 20 del Reglamento de D.A.Co., supra. Además, sostiene que el foro apelativo intermedio funda-mentó su determinación “cambiando las fechas en que ocu-rrieron los eventos ... [y] expediente administrativo” (Cer-tiorari, pág. 12), específicamente al concluir que D.A.Co. notificó la suspensión de la vista y su reinstalación el día antes de su celebración, o sea, el 25 de enero de 2006. Más aún, entiende que D.A.Co. podía celebrar la vista en la fecha señalada, ya que la notificación de la celebración fue adecuada por haber sido realizada con tiempo suficiente, permitiendo así a los esposos Hernández Medina prepa-rarse para participar en ésta.
Por su parte, los esposos Hernández Medina sostienen *249 que la Juez Administrativa suspendió y reinstaló la vista administrativa señalada para el 26 de enero de 2006 “sin cumplir con el reglamento o debido proceso de ley o regla-mentos promulgados por [D.A.Co.]”.(20) Específicamente, alegan que la agencia no cumplió con los requisitos de no-tificación establecidos por la Sección 3.9 de la L.P.A.U., supra, una vez decidió reinstalar la celebración de la vista administrativa que había suspendido, y que la Juez Admi-nistrativa obligó comparecer a su representación legal a la celebración de una vista que no se les notificó apropiadamente. Por lo anterior, alegan que no pudieron prepararse adecuadamente para la vista que finalmente celebró D.A.Co. en rebeldía.
La señora Gutiérrez presentó una querella ante D.A.Co. contra los esposos Hernández Medina por alegados vicios de construcción en la propiedad que éstos le vendieron. Luego de varios incidentes procesales, incluyendo suspen-siones de la vista administrativa promovidas por los espo-sos Hernández Medina, el 23 de noviembre de 2006 D.A.Co. determinó señalar la vista adjudicativa del caso para el 26 de enero de 2006. Posteriormente, la representación legal de los esposos Hernández Medina solicitó la suspensión de la referida vista el 23 de enero de 2006, o sea, tres días antes de la fecha establecida por D.A.Co. para su celebración. Este mismo día, la Juez Administrativa conce-dió la suspensión solicitada bajo la creencia, inducida por el abogado de los esposos Hernández Medina, de que el abogado de la señora Gutiérrez estaba conforme con esta suspensión. Sin embargo, luego que el abogado de la se-ñora Gutiérrez le informara que no estaba de acuerdo con la suspensión, la Juez Administrativa, “para evitar dilatar aún más los procedimientos ... torn [ó] la determinación el mismo día de la notificación por vía telefónica a las partes *250 de la suspensión, de dejar sin efecto la suspensión verbal y que permanezca en vigor la fecha ... para la celebración de la vista ... pactadla] por todas las partes desde el mes de noviembre de 2005”. (Énfasis suplido.)(21)
A la luz del expediente del presente caso, entendemos que no existe controversia en cuanto a que la solicitud de la suspensión de la vista fue presentada ante D.A.Co. el 23 de enero 2006 y que en esta misma fecha se le informó a las partes que ésta se había concedido y revocado posteriormente. No obstante, el Tribunal de Apelaciones concluyó en su sentencia que la Juez Administrativa noti-ficó su determinación de conceder y revocar la suspensión de la vista el 25 de enero de 2006, o sea, un día antes de la fecha establecida para la celebración de la vista. Por lo anterior, dicho foro razonó que D.A.Co. no había notificado adecuadamente a los esposos Hernández Medina sobre la celebración de la vista que había accedido a suspender, ya que no lo hizo con quince días de antelación a ésta, como estipula la Sección 3.9 de la L.P.A.U., supra. Entendió que lo anterior provocó que los esposos Hernández Medina no pudieran prepararse para participar en la vista, ya que habían descansado en la suspensión concedida.
La determinación realizada por el Tribunal de Apelaciones se fundamentó en fechas de eventos procesales distintas a las que refleja el expediente del presente recurso. Esto contraviene la norma de que en el ejercicio de la función revisora de los tribunales, “[e] 1 expediente administrativo constituirá la base exclusiva ... para la revisión judicial ulterior”. Mun. de San Juan v. J.C.A., supra, pág. 280. Véanse, además: Sección 3.18 de la L.P.A.U., supra; Magriz v. Empresas Nativas, supra. Conocido es que el foro apelativo intermedio, como tribunal de derecho, no tiene la facultad de realizar determinaciones sin base en el expediente sobre determinado caso ante su consideración. *251 Depto. Rec. v. Asoc. Rec. Round Hill, supra, pág. 99. El tribunal de apelaciones tenía que tener presente que “ ‘de existir prueba conflictiva!, debía] considerar como conclu-yente la determinación de hecho de la agencia’ ” y que “ ‘debe respet[ar] la determinación de credibilidad reali-zada’ ” por ésta. Padín Medina v. Adm. Sist. Retiro, supra. A la luz de lo anterior, entendemos que el Tribunal de Ape-laciones erró al concluir que la notificación de la suspen-sión de la vista y su posterior revocación fue realizada el día antes de celebrarse, situación que contrasta con las determinaciones que sobre el particular realizó D.A.Co. y, más aún, la totalidad del expediente del caso.
Como habíamos indicado, del expediente del presente caso se desprende que la fecha 26 de enero de 2006 seña-lada por D.A.Co. para la celebración de la vista adjudica-tiva en controversia, había sido establecida por acuerdo entre las partes y notificada por la agencia administrativa desde el 23 de noviembre de 2005. Cabe señalar que la referida vista, había sido anteriormente señalada y sus-pendida en varias ocasiones a instancia de los esposos Her-nández Medina. De otra parte, la suspensión de la vista que origina la controversia ante nuestra consideración y su posterior revocación fueron realizadas y notificadas el mismo día de solicitada y concedida, o sea, el 23 de enero de 2006. De hecho, esta solicitud de suspensión de vista administrativa fue presentada por el abogado de los espo-sos Hernández Medina, contrario a lo establecido por la L.P.A.U. y el Reglamento de D.A.Co., que establecen que esta solicitud tenía que presentarse cinco días antes de la fecha en que se celebraría la vista administrativa. See. 3.12 de la L.P.A.U., supra; Regla 20 del Reglamento de D.A.Co., supra. Al así proceder, la representación legal de los esposos Hernández Medina se expuso a las consecuen-cias de su falta de diligencia en el trámite que debió seguir en relación con la querella presentada contra sus representados.
*252 A la luz de lo discutido anteriormente, entendemos que la conclusión del tribunal apelativo de que la reinstalación de la vista infringió el debido proceso de ley de la parte querellada cuando alegó que no podía prepararse adecua-damente para defender su caso, es irrazonable. La repre-sentación legal de los esposos Hernández Medina conocía desde noviembre de 2005 que la vista ante D.A.Co. se ce-lebraría el 26 de enero de 2006, por lo que tuvo tiempo suficiente con antelación a la celebración de la vista —aproximadamente dos meses— para prepararse y parti-cipar en los procedimientos celebrados ante D.A.Co. en re-lación con la querella presentada por la señora Gutiérrez. De hecho, las fotos y el video de los alegados daños sufridos por la señora Gutiérrez prueba que alegó necesitaba para prepararse adecuadamente y participar en la vista, y cuya ausencia motivó la solicitud de suspensión de vista, le fue entregada por el abogado de la querellante el 24 de enero de 2006, esto es, dos días antes de la celebración de la vista.
En esencia, estamos ante una situación en la que D.A.Co. meramente se retractó de la concesión de una sus-pensión de vista, reinstalándola el mismo día de su solici-tud y concesión, por lo que entendemos que no era necesa-rio notificar nuevamente la fecha de la celebración de la vista conforme requiere la Sección 3.9 de la L.P.A.U., supra. Además, D.A.Co. tuvo ante su consideración una solicitud de suspensión que incumplió los requisitos esta-tutarios y reglamentarios para su presentación, por lo que entendemos que esta solicitud no debió siquiera ser consi-derada por la Juez Administrativa que atendía la querella presentada por la señora Gutiérrez. A la luz de los hechos del presente caso, la celebración de la vista se mantuvo en pie según lo pautado por D.A.Co. desde noviembre de 2005. Así, el abogado de los esposos Hernández Medina tenía el deber de acudir y participar efectivamente en la vista que celebró D.A.Co. Al no realizar lo anterior, llegando al punto *253 de acudir por mera cortesía y posteriormente abandonar los procedimientos, D.A.Co. se vio en la necesidad de no dilatar más la consideración del caso y continuar con él en rebeldía conforme como lo permite la L.P.A.U. 3 L.P.R.A. sec. 2160.
Finalmente, debemos expresar que la conducta desplegada por el abogado de los esposos Hernández Medina no es el mejor ejemplo de la necesaria para representar y proteger adecuadamente los intereses de un cliente. Ésta, sin lugar a dudas, atenta contra los principios básicos de la buena fe procesal que deben estar presentes en todo procedimiento adjudicativo, ya sea judicial o administrativo, en aras de “preservar un mínimo de conducta ética en todas las relaciones jurídicas”. J. Picó i Junoy, El principio de la buena fe procesal, Barcelona, Ed. Bosch, 2003, pág. 28. Así, de ninguna forma “puede alentar [se] la conducta maliciosa o fraudulenta de las partes, ni permitir que venza el más diestro en el uso de las normas procesales, sino el que tenga más razón”. Id., pág. 27. En esencia, es nuestra función asegurarnos que quien prevalezca lo hace con honestidad, esto es, con buena fe procesal. Conforme lo anterior, todo abogado tiene que tener presente que “[n]o instar una determinada actuación procesal en el momento procesal oportuno, con el objetivo malicioso de realizarlo fuera de su plazo legal para beneficiarse así de una situación privilegiada y ventajosa frente a la contraparte, solo puede tener como consecuencia su más pleno rechazo, esto es, su inadmisión”. Id., pág. 266. Con lo cual, un acto procesal efectuado infringiendo la buena fe, como evidentemente ha ocurrido en el presente caso, “no puede desplegar la eficacia deseada por el litigante malicioso”, íd., pág. 266. Y es que así tiene que ser, pues de lo contrario, el principio de la buena fe —principio que despliega su eficacia en todo el Derecho— quedaría como mera proclamación de un ideal al que aspirar, sin mecanismo de protección tendente a potenciar su virtualidad práctica.
*254 IV
Por los fundamentos anteriormente discutidos, procede dictar sentencia mediante la cual se resuelve que D.A.Co. actuó correctamente al celebrar la vista administrativa en controversia en el día que había señalado y notificado oportunamente. Conforme lo anterior, se revoca la senten-cia recurrida emitida por el Tribunal de Apelaciones y se reinstala la determinación de D.A.Co. en relación con la querella de vicios ocultos presentada por la señora Gutiérrez.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez no intervino.

 J. Picó i Junoy, El principio de la buena fe procesal, Barcelona, Ed. Bosch, 2003.

 Resolución del Departamento de Asuntos del Consumidor (Resolución de D.A.Co.), Determinación de hecho núm. 6, Apéndice del Certiorari, pág. 79.

 De acuerdo con. la Resolución emitida por el Departamento de Asuntos del Consumidor (D.A.Co.), la señora Gutiérrez le informó al señor Hernández los proble-mas siguientes: que luego de la compraventa, “la sala y el comedor de la casa tenían agua por todo el piso”; que varias secciones del techo de la residencia tenían “fuertes manchas negras ... con un olor muy fuerte”; que “el techo [de la residencia] no está terminado, [que tiene] escombros de cemento ... [no] está sellado, hay cables sueltos, varillas, cemento, madera incrustada en las vigas de cemento y agua aposada [sic] en la mayor parte del techo”; que el pozo de agua en los predios de la propiedad se filtra, y que los derrumbes de los taludes estaban ocasionando daños a la propiedad. Reso-lución de D.A.Co., Apéndice del Certiorari, págs. 79.

 La señora Gutiérrez enmendó posteriormente su querella original para, en-tre otras cosas, incluir al Banco Santander de Puerto Rico (Banco Santander) como parte interesada, por ser esta entidad financiera la que concedió el préstamo hipo-tecario para la compra de la propiedad. Apéndice del Certiorari, pág. 35.

 En esencia, la señora Gutiérrez identificó en su querella, entre otros proble-mas, los siguientes: “falta de drenaje de agua en el patio, desprendimiento de tierra y piedras en el talúd [sic] lateral trasero, grietas en el muro lateral izquierdo, falta de muro de sostenimiento en el talúd [sic] lateral, falta de rejas para detener de-rrumbes de piedras y sedimento, construcción sin un estudio de suelo adecuado ... falta de sistema adecuado para recolectar y disponer de las aguas pluviales en el talúd [sic] posterior, falta de sistema para evitar derrumbes en el talúd [sic] posterior, falta de sistema de drenaje en el muro de retención posterior para liberar la cantidad de agua y así evitar la presión hidrostátiea que [é]sta pueda causar sobre el muro”. Resolución de D.A.Co., Apéndice del Certiorari, pág. 75. Véase, además, la querella enmendada de la señora Gutiérrez presentada ante D.A.Co., Apéndice del Certiorari, págs. 37-39.

 De acuerdo con el expediente del presente recurso, la vista sobre el caso se había señalado para el 26 de enero de 2006 desde el 9 de noviembre de 2005, luego que la actual representación legal de los esposos Hernández Medina solicitara que esta vista no se celebrara el 29 de noviembre de 2005 tal como había sido señalada. Notificación y Orden de D.A.Co., Apéndice del Certiorari, pág. 278. Posteriormente, este señalamiento fue dejado sin efecto por D.A.Co. y en su lugar se reinstaló la fecha 29 de noviembre de 2005 luego que la representación legal de la señora Gutiérrez informara a la agencia administrativa que la representación legal de los esposos Hernández Medina informó incorrectamente que se habían puesto de acuerdo en cuanto a la fecha para celebrar ciertas deposiciones. Id., págs. 283-284. En esta ocasión se informó, además, que la fecha 26 de enero de 2006 se utilizaría “para la continuación de la vista, de ser esto necesario”. (Énfasis suprimido.) Id., pág. 284. Así las cosas, la representación legal de los esposos Hernández Medina le informó a D.A.Co. que no estaba preparada para representar adecuadamente a los esposos en la vista señalada para el 29 de noviembre de 2005. Por lo anterior, el 23 de noviembre de 2005 D.A.Co. emitió nuevamente una Notificación y Orden, donde informó que la vista que se celebraría el 29 de noviembre de 2005 sería una vista tipo conferencia con antelación a la vista administrativa,' mientras que la vista administrativa se celebraría “el 26 de enero de 2006 ... fecha que ya había sido señalada para la vista y no fue objetada”. (Énfasis suplido.) Apéndice del Certiorari, pág. 287.

 Resolución de D.A.Co., Apéndice del Certiorari, pág. 76. La representación legal de los esposos Hernández Medina solicitó la suspensión porque alegadamente la señora Gutiérrez no le había entregado las fotos de los defectos estructurales que tomó y la cinta de video que preparó de éstos. Apéndice del Certiorari, pág. 289. De acuerdo con el expediente, lo anterior fue entregado y recibido por el abogado de los esposos Hernández Medina el 24 de enero de 2006. Apéndice del Certiorari, págs. 292-295.

 Apéndice del Certiorari, págs. 292-295.

 íd.

 Resolución en Reconsideración emitida por D.A.Co., Apéndice del Certiorari, pág. 104.

 Resolución de D.A.Co., Apéndice del Certiorari, págs. 76-77. De hecho, la resolución también expresamente consigna que “[l]a suspensión [de la vista] y su correspondiente revocación y reinstalación de la fecha de [la] vista fueron realizadas y notificadas el mismo día de concedidas (Énfasis suplido.) Id., pág. 77. Más aún, en su Resolución en Reconsideración, D.A.Co. añade que lo anterior fue realizado el mismo día 23 de enero de 2006 “con s[6\lo horas de diferencia, por lo que no fue necesario plasmarlo por escrito”. (Énfasis suplido.) Apéndice del Certiorari, pág. 104. Cabe señalar también que la representación legal de los esposos Hernández Medina reconoce lo anterior en la moción de reconsideración que presentó ante D.A.Co. cuando hace referencia a “la decisión de suspender la vista y la posterior decisión de reinstalarla, decisiones que ocurrieron según surge de la resolución [de D.A.Co.] el 23 de enero [de 2006] (Énfasis suplido.) Apéndice del Certiorari, pág. 92.

 En su sentencia, el Tribunal de Apelaciones expresó que la suspensión de la vista “fue notificada por teléfono a las partes el 25 de enero de 2005 [sic] ” y que ese mismo día D.A.Co., ante objeciones del abogado de la señora Gutiérrez, determinó que el señalamiento de la vista continuaba en pie. Sentencia del Tribunal de Apela-ciones, Apéndice del Certiorari, pág. 305. De acuerdo con el tribunal apelativo, esta determinación se le informó a las partes por teléfono este mismo día, a su entender, el 25 de enero de 2006.

 Resolución de D.A.Co., Apéndice del Certiorari, pág. 104. Véase, además, el alegato presentado por los esposos Hernández Medina ante este Tribunal, Alegato de la parte peticionada, pág. 6.

 La Resolución de D.A.Co. consignó que “[l]a vista administrativa en el Mu-nicipio de Ponce fue notificada al abogado de [los esposos Hernández Medina] con posterioridad a la de este Departamento por lo que [é]sta tiene prioridad. En adición!,] este Departamento advino en conocimiento de que la [vista en Ponce] había sido suspendida y reseñalada para el mes de febrero con anterioridad a la moción de suspensión” presentada por el abogado ante D.ACo. (Énfasis suplido.) Apéndice del Certiorari, pág. 78.

 Notificación y Orden emitida por D.A.Co. para aclarar su resolución, Apén-dice del Certiorari, pág. 99.

 Sentencia del Tribunal de Apelaciones, Apéndice del Certiorari, pág. 310.

 íd., págs. 310-312.

 En el recurso presentado se señalaron los errores siguientes:
“PRIMER ERROR. Erró el Tribunal de Apelaciones en validar una solicitud de suspensión de vista administrativa incoada tres (3) días antes de la vista evidencia-ría, en contravención a lo dispuesto por la Sección 3.12 de la Ley de Procedimiento Administrativo Uniforme y de la Regla 20 del Reglamento de Procedimiento Adjudi-cativo de DACO.
“SEGUNDO ERROR. Erró el Tribunal de Apelaciones y cometió abuso de dis-creción, apartándose de la información contenida en el expediente administrativo, al concluir que la suspensión de la vista se notificó por teléfono el día antes de su vista, o sea el 25 de enero de 2006, cuando la realidad es que la suspensión se notificó el mismo día en que fue solicitada, o sea el 23 de enero de 2006.
“TERCER ERROR. Erró el Tribunal de Apelaciones y cometió abuso de discre-ción, apartándose de la información contenida en el expediente administrativo, al conclu[i]r que el abogado de la querellante, aquí peticionaria, se comunicó con la Jueza Administrativa para expresarle que no estaba de acuerdo con la suspensión.
“CUARTO ERROR. Erró el Tribunal de Apelaciones y cometió abuso de discre-ción, apartándose de la información contenida en el expediente administrativo, al conclu [i] r que el querellado fu[e] notificado de la reinstalación de la vista el día antes de la vista. Y al conelu[i]r que para ese momento el recurrido no estaba en posición de conseguir su prueba y estar preparada.” Certiorari, pág. 10.

 Alegato presentado ante este Tribunal por los esposos Hernández Medina, Alegato de la parte peticionada, pág. 8. Véase id., pág. 12.

 Alegato presentado ante este Tribunal por los esposos Hernández Medina, Alegato de la parte peticionada, pág. 8. Véase id., pág. 12.

 Resolución de D.A.Co., Apéndice del Certiorari, págs. 76-77.