Opinión disidente emitida por el
Juez Asociado Señor Rivera Pérez.
El 21 de julio de 2006 expedimos auto de de certiorari para revisar una sentencia dictada por el Tribunal de Apelaciones, mediante la cual determinó que la prueba de dopaje requerida para la concesión de la licencia de operador de taxi turístico es un requisito sine qua non, el cual emana de la Ley de Transportación Turística Terrestre de Puerto Rico, Ley Núm. 282 de 19 de diciembre de 2002 (23 L.P.R.A. see. 6754 et seq.) y no requiere la aprobación de un reglamento por parte de la Compañía de Turismo.
Por estar igualmente dividido el Tribunal, se confirmó la determinación del Tribunal de Apelaciones. Disentimos de este curso de acción. Entendemos que la controversia medular en este caso se circunscribe a determinar si la Compañía de Turismo cumplió con el requisito plasmado *835 en la Sec. 5.4 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. see. 2184. Esta disposición legal obliga a las agencias concernidas a concederle un procedimiento adjudicativo a toda persona que se le haya denegado la concesión de una licencia.
I
El 28 de octubre de 2004, el Sr. José Camacho Huertas (señor Camacho Huertas o peticionario) acudió al Área de Transportación Turística de la Compañía de Turismo a los fines de solicitar la renovación de la licencia de operador de taxi turístico. En esa ocasión, el Sr. Ángel Román Lebrón orientó al señor Camacho Huertas sobre los requisitos que tenía que completar para solicitar la renovación de su licencia de operador de taxi turístico.([1]) Como parte de dichos requisitos, la Compañía de Turismo le requirió al señor Camacho Huertas realizarse una prueba de dopaje y le entregó una citación para que éste se la realizara al día siguiente, antes de las tres de la tarde.([2]) No obstante, el señor Camacho Huertas no acudió a realizarse la prueba.
Alrededor de un mes más tarde, el señor Camacho Huertas fue a la Compañía de Turismo para entregar los documentos requeridos. Tras examinar los documentos presentados por el señor Camacho Huertas, la Sra. Yasmín Torres Rodríguez se percató de que faltaban documentos, entre éstos, la prueba de sustancias controladas. En vista de ello, le indicó al señor Camacho Huertas que debía entregar a esa agencia un documento que expresara las razones por las cuales no se hizo la prueba de dopaje el día señalado.([3])
A la semana siguiente, el 30 de noviembre de 2004, el señor Camacho Huertas entregó todos los documentos re *836 queridos, incluyendo el escrito en el que explicó los motivos que le impidieron realizarse la prueba de dopaje el día indicado por la Compañía de Turismo. En el escrito adujo que no pudo realizarse la prueba de sustancias controladas el día pautado para ello porque tenía que recoger a sus hijos. Sostuvo, además, que él le había indicado al funcionario que lo atendió que no podía realizarse la prueba de dopaje el día señalado y que éste le informó que no podía hacerse la prueba otro día.([4])
Aun cuando el señor Camacho Huertas entregó los documentos solicitados, la señora Torres Rodríguez le informó que ese día no le expedirían una nueva citación para realizarse la prueba de sustancias controladas y le indicó que posteriormente lo llamarían para que pasara a recoger la orden.([5])
El 7 de diciembre de 2004, a las 8:20 de la mañana, la señora Torres Rodríguez se comunicó vía telefónica con el señor Camacho Huertas y le dijo que debía pasar a recoger la orden para la prueba de dopaje.([6]) Según surge de los autos, el señor Camacho Huertas expresó que pasaría a recoger la orden. Sin embargo, no lo hizo y dos días más tarde llamó al Area de Transportación Turística para notificar que pasaría a buscar el referido para la prueba de sustancias controladas.([7])
No obstante, la señora Torres Rodríguez le comunicó al peticionario que no podía entregarle el referido para la prueba de dopaje puesto que no lo buscó el día señalado para ello. Ante tal situación, el señor Camacho Huertas le explicó a la señora Torres Rodríguez que el día que lo llamaron por teléfono para que recogiera el referido, él estaba durmiendo y no sabía si la llamada había sido real o un sueño. ([8])
*837 Así las cosas, el 3 de noviembre de 2005, la Compañía de Turismo emitió una “Resolución y Orden” en la cual declaró “no ha lugar” la solicitud de renovación de licencia de operador de taxi turístico presentada por el señor Camacho Huertas. Fundamentó su denegatoria, arguyendo que en virtud de los Arts. 13 y 44 de la Ley Núm. 282 de 19 de diciembre de 2002 (23 L.RR.A. sees. 6778 y 6822), el peticionario no había demostrado su idoneidad para la obtención de la licencia de operador de taxi turístico, ya que no se había realizado la prueba de dopaje.([9])
Oportunamente, el señor Camacho Huertas solicitó reconsideración de la determinación emitida por la agencia. En su escrito, el señor Camacho Huertas expuso que la Compañía de Turismo actuó en abierta violación a su ley habilitadora y a la Sec. 5.1 de L.P.A.U., 3 L.P.R.A. see. 2181, ya que no había promulgado un reglamento para regular el procedimiento de expedición de licencias de operadores de taxi turístico.([10]) Sostuvo, además, que, según la See. 5.4 de la L.P.A.U., tenía derecho a impugnar la determinación de la agencia mediante un procedimiento adjudi *838 cativo que le brindara todas las garantías del debido proceso de ley.([11])
En vista de que la “Moción de Reconsideración” presentada por el señor Camacho Huertas no fue acogida, éste presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. En el escrito, el señor Camacho Huertas reiteró los argumentos esgrimidos en su “Moción de Reconsideración”. Puntualizó, además, que la aprobación de un reglamento para la administración de la prueba de dopaje es indispensable para evitar la arbitrariedad en la aplicación de la Ley Núm. 282, supra, puesto que dicho estatuto no establece el procedimiento que se ha de seguir ni dispone las salvaguardas necesarias para garantizar la protección al derecho a la intimidad del solicitante. ([12])
Por su parte, la Compañía de Turismo señaló que el señor Camacho Huertas no demostró que era idóneo para la obtención de la renovación de la licencia taxi turístico, puesto que no se realizó la prueba de dopaje requerida por la Ley Núm. 282, supra. La agencia argüyó que el procedimiento establecido en el estatuto para que los solicitantes de la licencia de taxi turístico se realicen la prueba de sustancias controladas, no es arbitrario, ya que aplica a toda persona que solicite la licencia.
Sin embargo, la Compañía de Turismo admitió que no contaba con un reglamento que regulara todo lo concerniente a la prueba de dopaje y a los requisitos estatutarios para la obtención de la licencia de operador de taxi turístico. No obstante, expresó que, desde la puesta en vigor de la disposición legal, ha estado laborando para lograr la aprobación de un reglamento que regule lo mencionado.([13])
Luego de ponderar los argumentos esbozados por ambas *839 partes, el Tribunal de Apelaciones resolvió que la prueba de dopaje para la concesión de la licencia de operador de taxi turístico es un requisito sine qua non, el cual emana de la Ley Núm. 282, supra, y no requiere la aprobación de un reglamento. Ello en vista de que, en aras de proteger la vida y la propiedad, es un objetivo razonable que el Estado se asegure que los operadores de taxi turístico conduzcan libres de la influencia de sustancias controladas. Finalmente, el foro apelativo intermedio sostuvo que la determinación de la Compañía de Turismo está avalada por evidencia sustancial que obra en el expediente.
Inconforme con dicha determinación, el señor Camacho Huertas acudió ante nos mediante un recurso de certiorari, señalando que el foro apelativo intermedio el error siguiente:
ERR[Ó) EL TRIBUNAL DE APELACIONES AL ENTEN-DER QUE LA LEY282 DEL 19 DE DICIEMBRE DE 2002, AL EXIGIR PRUEBAS DE SUSTANCIAS CONTROLADAS, NO REQUIERE DE LA AGENCIA ESTABLECER UN REGLA-MENTO QUE ESTABLEZCA Y DIVULGUE LOS CRITE-RIOS DE CÓMO SE REALIZARAN [sic] DICHAS PRUEBAS Y LAS CONSECUENCIAS DE NO HACERLAS. EN LA AL-TERNATIVA, ERRÓ EL TRIBUNAL DE APELACIONES AL NO CONSIDERAR QUE LOS ARTÍCULOS QUE HACEN REFERENCIA A DICHAS PRUEBAS SON VAGOS Y NO CONTIENEN PARÁMETROS QUE ILUSTREN A LOS PETICIONARIOS. (Énfasis en el original.) Petición de certiorari, pág 3.
Examinada la petición de certiorari, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver la controversia ante nuestra consideración.
II
Hace cuatro lustros la Asamblea Legislativa aprobó la L.P.A.U.,([14]) a los fines de estructurar y crear un cuerpo de *840 reglas mínimas y uniformes para gobernar los procedimientos de reglamentación, adjudicación y concesión de licencias realizados por las agencias gubernamentales.([15]) En atención a lo anterior, la L.P.A.U. sustituyó los procedimientos administrativos que eran incongruentes con sus disposiciones estatutarias y ordenó el manejo de tales asuntos de manera compatible con sus preceptos.([16])
La pieza legislativa en cuestión le delegó a los organismos administrativos facultades cuasi judiciales en aras de proveer un sistema adjudicativo económico, rápido, flexible y práctico.([17]) Ahora bien, dado que las determinaciones de los entes administrativos pueden interferir con los intereses de la libertad y propiedad de las personas, la L.P.A.U. extendió a los procesos de las agencias administrativas la garantía a un debido proceso de ley. No obstante, en Almonte et al. v. Brito, 156 D.P.R. 475 (2002), recalcamos que las normas del debido proceso de ley no aplican en los procedimientos adjudicativos de las agencias con la misma rigurosidad que en la adjudicación judicial. Ello es así, puesto que hemos reconocido que los procedimientos administrativos conducidos en las agencias administrativas están revestidos de flexibilidad y celeridad.
Como parte del debido proceso de ley en su vertiente procesal, la L.P.A.U. dispone que en todo procedimiento adjudicativo formal se salvaguardarán los derechos siguientes: a la notificación oportuna de los cargos; a presentar evidencia; a una adjudicación imparcial, y a que la decisión sea fundamentada en el expediente.([18]) El disfrute de los derechos mencionados sólo es posible a través de una audiencia. No obstante, en Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 730 (1982), decretamos que el debido *841 proceso de ley no requiere que haya una vista previa a toda privación de un derecho o interés propietario. Basta con que, en algún momento significativo, la parte afectada por la determinación de la agencia tenga la oportunidad de defenderse y presentar su caso en un proceso con las garantías que entraña el debido proceso de ley.([19])
En cuanto a los procedimientos para la concesión de licencias y franquicias, la See. 5.4 de la L.P.A. U., supra, dis-pone que a “[t]oda persona a la que se le deniegue la concesión una licencia ... o gestión similar tendrá derecho a impugnar la determinación de la agencia mediante un procedimiento adjudicativo” estatuido en la ley especial de que se trate y en las Secs. 3.1 a 3.18 de la L.P.A.U. (Énfasis suplido.([20])
Del texto legal citado se colige que toda persona a la que una agencia administrativa le deniegue una licencia, tendrá el derecho a un debido proceso de ley en el que pueda impugnar esta determinación. Necesariamente, tal procedimiento deberá garantizarles a los individuos los derechos plasmados en la Sec. 3.1 de la L.P.A.U. Según lo anterior, en el procedimiento adjudicativo en donde se impugne la denegación de una licencia, la parte afectada tiene el derecho a confrontarse con los testigos, a presentar prueba oral y escrita a su favor, a la presencia de un adjudicador imparcial y a que la decisión esté fundamentada en el expediente administrativo.
Por lo tanto, si la agencia administrativa no le confiere a la persona afectada por su dictamen el procedimiento adjudicativo mencionado, así como las garantías procesales que emanan de la L.P.A.U., incurrirá en violaciones al debido proceso de ley.
*842 III
Es un principio firmemente establecido en nuestro ordenamiento jurídico que la revisión judicial de las decisiones administrativas tiene como norte delimitar la discreción de las agencias y asegurarse que éstas actúen según los poderes delegados y conforme a la ley.([21]) La revisión judicial de las decisiones administrativas comprende tres áreas, a saber: la concesión del remedio apropiado, la revisión de las determinaciones de hecho según el criterio de evidencia sustancial y la revisión completa de las conclusiones de Derecho.([22])
Respecto a las determinaciones de hechos emitidas por los organismos administrativos, la L.RA.U dispone que los tribunales sostendrán éstas si se fundamentan en evidencia sustancial. ([23]) Como se sabe, evidencia sustancial es aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión.([24]) Sin embargo, las conclusiones de derecho efectuadas por las agencias se revisarán en todos sus aspectos.([25]) Ahora bien, ello no significa que los tribunales al revisar las decisiones administrativas, gocen de libertad absoluta para desechar las conclusiones e interpretaciones de la agencia, y sustituir el criterio de ésta por el propio.![26])
Sabido es que los tribunales apelativos concederán gran deferencia a las decisiones de las agencias administrativas en vista de la vasta experiencia y el conocimiento especializado que éstas poseen.([27]) Es por ello que las decisiones administrativas gozan de una presunción de corrección y legalidad. No obstante, la deferencia a la interpretación de *843 la agenda cederá cuando ésta afecte derechos fundamentales, resulte irrazonable o conduzca a la comisión de injusticias.([28])
De ahí que, al ponderar la decisión emitida por una agencia, los tribunales deberán determinar si la actuación de la agencia fue arbitraria, ilegal o tan irrazonable, que constituyó un abuso de discreción.([29]) Asimismo, la interpretación de la agencia no prevalecerá cuando ésta produce resultados antagónicos o contrarios a la finalidad del estatuto interpretado.([30])
IV
A la luz de los preceptos expuestos, debemos resolver si la Compañía de Turismo violó las garantías procesales que dimanan del debido proceso de ley, al no conferirle al señor Camacho Huertas un procedimiento adjudicativo en donde éste tuviera la oportunidad de impugnar la determinación de la referida agencia.
Según indicáramos anteriormente, la See. 5.4 de la L.P.A.U., supra, dispone claramente que cuando la agencia deniegue la concesión de una licencia, la persona afectada tendrá derecho a impugnar tal determinación mediante un procedimiento adjudicativo. Ello, como corolario del debido proceso de ley que le garantiza un proceso justo a los individuos cuando la determinación de la agencia administrativa afecta un interés propietario. Por lo tanto, cuando el ente administrativo deniegue la concesión de una licencia, está obligado a celebrar una vista evidenciaria en donde la parte afectada pueda impugnar la determinación con todas las garantías procesales.
En este caso, el señor Camacho Huertas se desempeñó por años como operador de un taxi turístico. Tras la expi *844 ración de su licencia, éste acudió a la Compañía de Turismo para renovarla. Posteriormente, la Compañía de Turismo declaró “no ha lugar” la solicitud de renovación de la licencia del señor Camacho Huertas en vista de que éste no acudió a la agencia para buscar el referido para la prueba de sustancias controladas.
Luego de la determinación adversa emitida por la Compañía de Turismo, el señor Camacho Huertas presentó un escrito en la cual solicitó la reconsideración del dictamen de la agencia y que se le concediera la celebración del procedimiento adjudicativo plasmado en la See. 5.4 de la L.P.A.U., supra, con el propósito de entregar el resultado de la prueba de dopaje requerida. No empece lo anterior, la Compañía de Turismo declaró “no ha lugar” la moción presentada por el peticionario y no le proveyó a éste la vista adjudicativa requerida por la L.P.A.U.
Al así actuar, la Compañía de Turismo violó los postulados más básicos y elementales de nuestro sistema de justicia, a saber, el derecho a ser oído cuando se interfiere con el interés propietario de una persona. La agencia ignoró el lenguaje claro e inequívoco de la L.P.A.U. al no concederle al señor Camacho Huertas la vista requerida. Aun cuando hemos reconocido una amplia gama de discreción a las agencias administrativas, en este caso la Compañía de Turismo no tenía discreción para obviar un procedimiento administrativo mandatario por ley. Más aún, la Ley Núm. 282 de 19 de diciembre de 2002, en su Art. 29 (23 L.P.R.A. sec. 6794), autoriza a la Compañía de Turismo a celebrar vistas adjudicativas motu proprio o a petición de parte interesada. Más adelante, el artículo señala que la facultad adjudicativa delegada a la Compañía de Turismo deberá ser implantada conforme a las disposiciones de la L.P.A.U.
Concluimos que la Compañía de Turismo estaba obligada a concederle al señor Camacho Huertas una vista adjudicativa en donde éste pudiese impugnar la determinación emitida por ésta. La agencia no podía privar al señor Camacho Huertas de su interés propietario sin la garantía constitucional a un debido proceso de ley.
*845 Es imperativo indicar que aun cuando el señor Camacho Huertas no buscó la orden para realizarse la prueba de dopaje el día indicado por la agencia, ésta no podía obviar el procedimiento dispuesto por la L.P.A.U. Conocemos el interés del Estado en la vida y seguridad de los ciudadanos es de gran preeminencia, pero ello no es razón para ignorar el claro lenguaje de la L.P.A.U.
V
Por los fundamentos antes expuestos, respetuosamente DISENTIMOS del curso de acción de la Mayoría.

(1) Apéndice de la Petición de certiorari, pág. 55.

(2) íd., págs. 55-56.

(3) íd., pág. 57.

(4) íd, “Resolución y Orden” de la Compañía de Turismo, pág. 31.

(5) íd, pág. 57.

(6) íd, pág. 58.

(7) íd, pág. 31.

(8) íd.

(9) El Art. 13 de la Ley Núm. 282 de 19 de diciembre de 2002 dispone, inter alia, lo siguiente:
“(a) Nadie podrá dedicarse a prestar servicios de transportación turística terrestre, ni de servicio y venta de taxímetros, sin previamente haber solicitado y obtenido de la Compañía de Turismo la correspondiente franquicia, autorización, permiso o licencia.
“(b) La Compañía de Turismo tendrá la facultad de otorgar las franquicias, autorizaciones, permisos o licencias necesarias para autorizar la prestación de los servicios de transportación turística terrestre, y de servicio y venta de taxímetros. Las franquicias, autorizaciones, permisos y licencias serán concedidas por la Compañía de Turismo tomando en consideración la necesidad y conveniencia, la idoneidad del peticionario y el estricto cumplimiento por el mismo de todas las disposiciones de este capítulo y reglamentos aplicables.
“(c) El procedimiento y trámite a seguirse para la expedición de franquicias, autorizaciones, permisos o licencias, así como los requisitos que tendrán que cumplir los solicitantes, se regirán por las normas que mediante reglamento establezca la Compañía de Turismo.”
Por otra parte, el Art. 44(i)(4) de la referida ley, 23 L.P.R.A. sec. 6821(i)(4), dispone que es un requisito indispensable para solicitar la licencia de operador presentar, entre otros documentos, un certificado médico acompañado de los resultados de la prueba de sustancias controladas realizada.

(10) 3 L.P.R.A. see. 2181.

(11) Apéndice de la Petición de certiorari, págs. 35-40.

(12) íd., págs. 21-27.

(13) Id., págs. 47-53. Es menester señalar que a finales de 2006, la Compañía de Turismo aprobó el Reglamento de Procedimientos Adjudicativos de Transportación Turística y el Reglamento Aplicable a la Transportación Turística Terrestre, el cual regula todo lo concerniente a la expedición, renovación y cancelación de licencia de operador de taxi turístico.

(14) 3 L.P.R.A. see. 2101 et seq.

(15) Perfect Cleaning v. Cardiovascular, 162 D.P.R. 745 (2004); Pagán Ramos v. F.S.E., 129 D.P.R. 888 (1992).

(16) Olivo v. Srio. de Hacienda, 164 D.P.R. 165 (2005); Perfect Clearing v. Cardiovascular, supra.

(17) Almonte et al. v. Brito, 156 D.P.R. 475, 481 (2002).

(18) 3 L.P.R.A. see. 2151.

(19) En Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 730 (1982), enfatizamos que para determinar el tipo de vista concedida y el momento adecuado, es menester analizar conjuntamente los intereses gubernamentales y los de la persona afectada.

(20) 3 L.P.R.A. sees. 2151-2168.

(21) Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279 (1999).

(22) 3 L.P.R.A. see. 2175.

(23) íd.

(24) P.C.M.E. v. J.C.A., 166 D.P.R. 599 (2005).

(25) 3 L.P.R.A. see. 2175.

(26) Otero v. Toyota, 163 D.P.R. 716 (2005).

(27) Martínez v. Rosado, 165 D.P.R. 582 (2005).

(28) Véanse: Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881, 889 (1999); Com. Seg. P.R. v. Antilles Ins. Co., 145 D.P.R. 226 (1983).

(29) Véanse: Mun. de San Juan v. J.C.A., supra; Fuertes y otros v. A.R.Pe., 134 D.P.R. 947 (1993).

(30) Véase Costa, Piovanetti v. Caguas Expressway, supra.