Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| DORIS JEANNETTE CORREA LEDÉE<br><br>*Recurrente*<br><br><br>v.<br><br><br>NEGOCIADO DE SEGURIDAD DE EMPLEO (NSE)<br><br>*Recurrido* | KLRA202500071 | Revisión Administrativa procedente del Departamento del Trabajo y Recursos Humanos; Negociado de Seguridad de Empleo<br><br>Apel. Núm.:<br>PUA-09806-24<br>Reclamación:<br>A00-000-1088-5176<br><br>Sobre:<br>Verificación Laboral-Inelegibilidad a los beneficios del "PUA" y "CARES" |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de marzo de 2025.

La recurrente, Doris Jeannette Correa Ledée (parte recurrente o señora Correa Ledée), comparece por derecho propio ante nos y solicita que dejemos sin efecto el pronunciamiento emitido por el Secretario del Departamento del Trabajo y Recursos Humanos (Secretario del DTRH), el 11 de diciembre de 2024. Mediante el mismo, el DTRH confirmó la determinación del Negociado de Seguridad de Empleo (Negociado), en virtud de la cual decretó que la recurrente no es elegible para ser acreedora de los beneficios de seguro por desempleo, a tenor con el *Coronavirus Aid, Relief, and Economic Security Act* (Cares Act).

Por los fundamentos que expondremos a continuación, se **confirma** la *Resolución* administrativa recurrida.

## I.

Según surge del expediente, la recurrente laboró en años antes de la pandemia del COVID para el Hogar La Casa de Mamita

Número Identificador

SEN2025_____

(Hogar). Adujo que, el 2 de febrero de 2020, comenzaría a trabajar con Hogar como directora de funciones. Sin embargo, alegó que el Hogar cerró operaciones el 16 de marzo de 2020 a causa del COVID.

Así las cosas, la parte recurrente solicitó los beneficios de compensación de seguro por desempleo del *Pandemic Unemployment Assistance* (PUA), bajo el Cares Act. El 13 de abril de 2021, la señora Correa Ledée recibió una comunicación del Negociado requiriéndole información sobre verificación laboral para poder determinar la elegibilidad para recibir los beneficios de asistencia de Desempleo por Pandemia (PUA). Meses después, el 29 de julio de 2021, el Negociado remitió a la parte recurrente la *Determinación de Asunto no Monetario*, en el cual le informó que los documentos presentados no eran suficientes para realizar la acreditación de empleo o trabajo por cuenta propia. Por tanto, le notificó que no era elegible para recibir los beneficios del PUA, así pues, le informó el término para apelar la determinación.

El 13 de agosto de 2021, en desacuerdo, la parte recurrente apeló la determinación y solicitó una audiencia ante la Árbitro. El 29 de mayo de 2024, la División de Apelaciones del DTRH (Apelaciones) notificó una *Orden y Señalamiento de Audiencia ante el Árbitro Audiencia Telefónica*, la cual se fijó para el 23 de julio de 2024. El 9 de julio de 2024, Apelaciones notificó a la señora Correa Ledée que se suspendió el señalamiento previo ante el árbitro. Ese mismo día, Apelaciones emitió una nueva *Orden y Señalamiento de Audiencia ante el Árbitro Audiencia Telefónica*; se calendarizó el nuevo señalamiento para el 11 de septiembre de 2024 vía telefónica y se especificó las instrucciones de la llamada. El 11 de diciembre de 2024, la Secretaria de Asuntos Legales del DTRH notificó la *Decisión del Secretario del Trabajo y Recursos Humanos*. En desacuerdo, la recurrente presentó la correspondiente apelación ante el Secretario del Trabajo y Recursos Humanos. En síntesis,

alegó que la incomparecencia a la audiencia se debió a que no recibió la notificación por correo postal, además, que el correo electrónico que proveyó al Negociado, el cual no utiliza, tenía muchos "spams". Adujo que no fue hasta el 2 de octubre de 2024 que abrió el portal de PUA y vio la última carta.

Surge de la *Decisión del Secretario del Trabajo y Recursos Humanos* que el 11 de septiembre de 2024, el árbitro llamó en tres ocasiones al número de la parte recurrente y que esta nunca contestó. Determinó que la excusa presentada por la señora Correa Ledée no es justa causa, por lo cual, el DTRH confirmó la resolución de la Árbitro y declaró que la parte recurrente es inelegible a los beneficios de seguro por desempleo a tenor con la Ley Cares. La parte recurrente presentó reconsideración ante la *Decisión del Secretario del Trabajo y Recursos Humanos* y este la declaró No Ha Lugar.

Inconforme, el 31 de enero de 2025, la parte recurrente compareció ante nos mediante el presente recurso de revisión judicial. En el mismo, formula el siguiente señalamiento de error:

> Que no asistió a la audiencia telefónica porque no recibió notificación por correo postal, que el correo electrónico estaba lleno de spam.

Luego de examinar el expediente que nos ocupa, y con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

El Reglamento Núm. 9056 de 8 de noviembre de 2018, Reglamento para administrar el programa de seguro por desempleo (Reglamento), fue adoptado por el Departamento del Trabajo en virtud de la Ley de Seguridad de Empleo, con el propósito de

establecer los procedimientos que han de seguirse ante reclamaciones y pago de beneficios por desempleo[1].

En lo que resulta pertinente al caso ante nuestra consideración, el Art. 6.2 del Reglamento dispone sobre las apelaciones ante los árbitros que cualquier parte con derecho a ser notificado de una determinación podrá apelar la misma en un término de 15 días desde que la notificación le fue enviada por correo o algún otro medio a su última dirección conocida. La apelación deberá hacerse por escrito bien sea por correo u otro medio electrónico y presentarse a la División de Apelaciones quien podrá prorrogar el término de 15 días por justa causa. En cuanto a la notificación de la audiencia telefónica, esta deberá contener, entre otros requisitos, nombre, dirección y teléfono del patrono; la dirección, número de teléfono, número de fax y dirección de correo electrónico de la División de Apelaciones o la Oficina de Apelaciones ante el Secretario; indicar que cualquier documento debe ser dirigido a dicha dirección; referencia a que las partes pueden examinar el expediente de la Oficina Local del Negociado, sujeto al cumplimiento con la Sección 14K de la Ley sobre Confidencialidad y Divulgación de la Información; advertencia de que las personas podrán comparecer por derecho propio o asistidas por abogado; información sobre alternativas para ciudadanos que necesiten acomodo razonable. En los casos que se vaya a celebrar una audiencia telefónica, la Orden Notificación también deberá incluir el nombre del árbitro o juez administrativo que generara la llamada; la dirección de la oficina, número de fax y correo electrónico a la cual todas las mociones, documentos, solicitudes de documentos relacionados con la audiencia deben ir dirigidos e instrucciones a

---

[1] Art. 1 del Reglamento.

seguir durante la audiencia, incluyendo el proceso para la presentación de evidencia[2].

Al iniciar la audiencia, el árbitro debe verter para récord su nombre completo, el de las partes y su representante, si alguno; día, hora y lugar; hacer constar si la audiencia se celebrará por teléfono; verificar la dirección de las partes. Cuando la audiencia sea vía telefónica, esta comenzará una vez el árbitro certifique la comparecencia de todas las partes en la línea telefónica o la imposibilidad de contactar a alguna de ella, luego de un esfuerzo razonable. Precisa enfatizar que toda audiencia deberá grabarse mediante un sistema video-magnetofónico, digital u otro medio que garantice la preservación e integridad del proceso y permita la reproducción de la grabación[3]. Una parte tiene derecho a una audiencia justa que implica que su reclamación sea decidida a base de testimonios y cualquier otra evidencia dada o presentada en la audiencia e incluida en el récord[4].

**-B-**

Es norma firmemente establecida en el estado de derecho vigente, que los tribunales apelativos están llamados a abstenerse de intervenir con las decisiones emitidas por las agencias administrativas, todo en deferencia a la vasta experiencia y conocimiento especializado que les han sido encomendados[5]. En este contexto, la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, (LPAUG) Ley Núm. 38-2017, establece el alcance de la revisión judicial respecto a las determinaciones administrativas. A tal efecto, la referida disposición legal expresa como sigue:

---

[2]Véase, Artículo 6, inciso 6.2 (c) del Reglamento.
[3] Véase, Artículo 6, inciso 6.2 (d) del Reglamento.
[4] Véase, Artículo 6, inciso 6.2 (g) del Reglamento.
[5] *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020)*; Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012); *Asoc. Fcias. v. Caribe Specialty II,* 179 DPR 923 (2010).

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal[6].

Al momento de revisar una decisión agencial, los tribunales deben ceñirse a evaluar la *razonabilidad* de la actuación del organismo[7]. Por ello, los tribunales no deben intervenir o alterar las determinaciones de hechos que emita, siempre que estén sostenidas por *evidencia sustancial* que surja de la *totalidad del expediente administrativo*[8]. Nuestro Tribunal Supremo ha definido el referido concepto como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión[9].

A tenor con esta norma, los foros judiciales limitan su intervención a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración[10]. En caso de que exista más de una interpretación razonable de los hechos, el tribunal debe sostener lo concluido por la agencia, evitando sustituir el criterio del organismo por sus propias apreciaciones[11]. Ahora bien, esta norma de deferencia no es absoluta. La misma cede cuando está presente alguna de las siguientes instancias: (1) cuando la decisión no está fundamentada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la apreciación de la ley, y; (3) cuando ha mediado una actuación irrazonable, o ilegal[12].

---

[6] 3 LPRA sec. 9675.
[7] *Capó Cruz v. Jta. Planificación et al., supra*; *Rolón Martínez v. Supte. Policía, supra*; *The Sembler Co. v. Mun. de Carolina, supra.*
[8] *Otero v. Toyota*, 163 DPR 716 (2005); *Pacheco v. Estancias*, 160 DPR 409 (2003).
[9] *Capó Cruz v. Jta. Planificación et al., supra; Rolón Martínez v. Supte. Policía, supra; Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425 (1997).
[10] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra.*
[11] *Pacheco v. Estancias, supra.*
[12] *Costa Azul v. Comisión de Seguridad,* 170 DPR 847 (2007).

**-C-**

Por su parte, en materia de derecho administrativo, el debido proceso de ley, en su vertiente procesal, se extiende al ejercicio de las facultades adjudicativas delegadas a la agencia, esto por su intervención directa con intereses de estirpe constitucional[13]. La *adjudicación* constituye el procedimiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que corresponden a una parte. Sección 1.6 (b), LPAUG[14]. De este modo, la ejecución de la referida garantía necesariamente debe propender al ejercicio de un proceso justo y uniforme para todos los involucrados.

La Ley Núm. 38-2017, *supra,* incorpora en sus disposiciones los criterios necesarios para imprimir legalidad a los procesos administrativos de adjudicación. En particular, la Sección 3.1 (a) del aludido estatuto, así como la jurisprudencia interpretativa pertinente, reconocen a todas las partes en un procedimiento adjudicativo las siguientes garantías mínimas del debido proceso de ley en su vertiente procesal: (a) notificación adecuada de los cargos o querellas o reclamos contra las partes; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial y; (d) derecho a que la decisión sea basada en el expediente[15]. Las antedichas salvaguardas constituyen el medio para asegurar que un organismo administrativo tenga ante sí todos los elementos de juicio necesarios para emitir una decisión adecuada. Por igual, conforme al entendido doctrinal aplicable, sirven para erradicar cualquier manifestación de arbitrariedad administrativa en el ejercicio de las funciones de adjudicación[16].

---

[13] *Almonte et al. v. Brito,* 156 DPR 475 (2002).
[14] Ley Núm. 38-2017, 3 LPRA sec. 9603 (b).
[15] 3 LPRA sec. 9641 (a); *Álamo Romero v. Adm. De Corrección,* 175 DPR 314 (2009); *Almonte et al. v. Brito, supra*; *Rivera Rodríguez & Co. v. Lee Stowell,* 133 DPR 881 (1993).
[16] *López y otros v. Asoc. de Taxis de Cayey,* 142 DPR 109, 113 (1996).

**-D-**

El 27 de marzo de 2020 el Congreso de los Estados Unidos promulgó el *Coronavirus Aid, Relief, and Economic Security Act,* conocido como el Cares Act[17], con el propósito de mitigar los efectos económicos que trajo consigo la pandemia por el Covid-19. Conforme el estatuto, se estableció el programa de asistencia de desempleo por pandemia, conocido como el *Pandemic Unemployment Assistance* (PUA), dirigido a proveer un alivio temporero a la clase trabajadora que se vio afectada por la pandemia. Como parte de los beneficios del PUA, las personas elegibles, que están desempleadas o parcialmente empleadas por razones relacionadas al Covid-19 y que no cualifican para los beneficios por desempleo regular, reciben una compensación de desempleo parcial o total por un término máximo de treinta y nueva (39) semanas[18]. Los requisitos para que un trabajador se considere elegible bajo el Cares Act para recibir el beneficio del PUA, son los siguientes:

> (3) COVERED INDIVIDUAL —The term "covered individual"—
>
> > (A) means an individual who—
> > (i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 2107, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 2107; and
> > (ii) provides self-certification that the individual—
> > (I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—
> > (aa) the individual has been diagnosed with COVID–19 or is experiencing symptoms of COVID–19 and seeking a medical diagnosis;
> > (bb) a member of the individual's household has been diagnosed with COVID–19;

---

[17] 15 USC sec. 9001 *et seq.*
[18] 15 USC sec. 9021.

(cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID–19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID–19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID–19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID–19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID–19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID–19;

(ii) the individual has to quit his or her job as a direct result of COVID–19;

(jj) the individual's place of employment is closed as a direct result of the COVID–19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section; or

    (II) is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 2107 and meets the requirements of subclause (I); and

    (B) does not include—

(i) an individual who has the ability to telework with pay; or

(ii) an individual who is receiving paid sick leave or other paid leave benefits, regardless of whether the individual meets a qualification described in items (aa) through (kk) of subparagraph (A)(i)(I).

[…]. 15 USC sec. 9021.

Con el propósito de mantener la integridad del programa de desempleo y atajar el posible fraude en programas federales de asistencia económica, el 11 de mayo de 2020, el Departamento del Trabajo de los Estados Unidos emitió el *Unemployment Insurance Program Letter* (UIPL), No. 23-20. Mediante el pronunciamiento, se orientó a los estados y territorios estadounidenses sobre las

funciones requeridas para implementar el PUA de forma íntegra, entre otros programas de ayuda económica contemplados en el Cares Act.

**III.**

En la presente causa, la recurrente impugna la determinación emitida por el DTHR, la cual ratifica su inelegibilidad para recibir los beneficios de seguro por desempleo, según provistos por el Cares Act. En específico, afirma que el recurrido erró al no realizar una notificación adecuada.

Tras realizar un examen minucioso del legajo apelativo y el expediente administrativo y escuchar la vista ante la árbitro, resolvemos no imponer nuestro criterio sobre el ejercido por el organismo recurrido.

Cónsono con lo anterior, colegimos que, contrario a lo propuesto por la recurrente, no se le violentó el debido proceso de ley. Surge del expediente que la recurrente le provee al Negociado la siguiente dirección postal: Urb. Campo Real Calle Rey Jorge, Las Piedras, Puerto Rico 00771-3445; la dirección de correo electrónico provista es: doriscorrea@rocketmail.com y; el número telefónico de contacto: 939-258-7360. Todas las comunicaciones realizadas por el Negociado, la árbitro y el DTRH se realizaron bajo un mismo número telefónico, dirección postal y el correo electrónico provisto por la parte recurrente. Es decir, no se tomó en consideración ningún elemento que no hubiese sido notificado con anterioridad.

En mérito de lo anterior, procede abstenernos de intervenir con lo resuelto. A la luz de la prueba que obra en el expediente que nos ocupa, el dictamen en disputa es uno razonable y legalmente oponible, razón por la cual merece sostenerse en toda su extensión.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de este dictamen, se ***confirma*** la resolución administrativa recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones